IN THE DISTRICT COURT OF THE UNITED
STATES FOR THE MIDDLE DISTRICT OF
ALABAMA, NORTHERN DIVISION

RECEIVED

Richard Wayne Wright, Sr.,
        Plaintiff,
        -VS-
Defendants, in their
individual and official
        Capacity.

\* DEMAND FOR JURY TRIAL
\*
\* CASE NO.
\* 2:05-CV-439-WHA-CSC
\*
\*
\*

Tahir Siddiq M.D.      \* Prison Health Services
William Sanders        \*    (P.H.S.)
   Sherry Seals        \* Brenda Austin
Selvester Nettles      \* Robert Washington
   Larry Ligon         \* Elizabeth Laseter
   Paul Phillips       \* Anthony Jackson
   Walton Solomon      \* Melvin Austin
Mose Foster            \* Mrs. Biven-tutt
   Dr. Hammer          \* Sgt. Davis
   Alberta Williams    \* Mrs. Gormon
Gwendolyn Babers       \* Dr. Smith
Officer Rudolph (BIF)  \* Nurse Taylor

SCANNED
DMW 7/28 12:40

Page A

Alex Rudolph          * Charles Blackledge
Keith Armagost        * Eric Williams
Harvey Ruffin         * Timothy Holmes
   Sgt. Specks        * Brain Hampton
Officer Ellis         * Johnny Bailey
Officer Franklin      * Micheal Strickland
                      *

      The above defendants address:
      Bullock Correctional Facility
      P.O. Box 5107
        Union Springs, Ala 36089
— — — — — — — — — — —

         Janet    Hicks
         Frank Lee Youth Center
         P.O. Box 208
         Deatsville, Ala. 36022
— — — — — — — — — — — —

Mark Bruton           * Kenneth Cargle
Sharon Holland        * Veronica Stringer
Camella Cargle        * John Dowling
  Nurse Hunter        * M.L. Monk (COS II)
Dr. Rayapati (M.D.)   * N. Burks (HAS)
  Mr. Jenkins         * Carolyn Longmire
                      * Lt. Taylor
          Page B

OFFicer Pullum (COI)  (B/M) *

The above defendants address:
Ventress Correctional Facility
P. O. Box 767
Clayton, Ala. 36016
— — — — — — — — — — — —

William C. Segrest
Board of Pardons and Paroles
301 S. RIPLEY STREET
P. O. BOX 302405
Montgomery, Ala. 36130-2405
— — — — — — — — — — — —

Carolyn Miles - Pruitt
Board of Pardons and Paroles
Probation and Parole officer
Lee County Justice Center
Suit 219
2311 Gateway Drive
Opelika, Ala. 36801- 6858

Page C

IN THE DISTRICT COURT OF THE UNITED
STATES FOR THE MIDDLE DISTRICT OF
ALABAMA NORTHERN DIVISION

RICHARD WAYNE WRIGHT, SR.,    *    **DEMAND FOR JURY TRIAL**
    Plaintiff,    *
    - VS -    *    CASE NO.
SYLVESTER NETTLES, et. al.,    *    2:05-cv-439-WHA-csc
    Defendants.    *

## MOTION TO AMEND COMPLAINT

Plaintiff Wright filed a 1983
Civil Suit Complaint and mailed it
on August 20, 2004. Plaintiff Wright
believes defendant Nettles and/or
agents intercepted plaintiff outgoing
legal mail and prevented it from
leaving Bullock Correctional Facility
(here after referred to as (B.C.F.)).
Plaintiff placed the correct postage
stamps on such legal mail, yet
it did not reach the Court as
Plaintiff intended. (see exhibits

Page I of 29

one (1) through three (3)).

The two (2) years period of limitation barred plaintiff from action which occured prior to April 30, 2003. Had not defendant Nettles and/or his agents intercepted plaintiff 1983 Civil Suit mailed on the 20th day of August 2004. The two (2) years limitation time would (at least) permitted plaintiff to include action exhibited maliciously by defendant(s) as far back as August 20, 2002, to be intertained by the Court. For such reason may the Court reconsider its order done on June 27, 2005, for such reason as indicated.

## Issue I

The following individuals de-

Page 2 of 29

defendants has shown cruel and unusual punishment in their individual and official capacity, breach of oath, breach of the 5th, 8th and 14th amendments of the United States Constitution, Cause plaintiff personal injuries and psychological injuries, deprivation of civil rights, breach of department of Correction polices, equal protection violation and deliberate indifference.

## I.

ON August 20, 2002 a hearing Was scheduled (while plaintiff was in segregation) the hearing was scheduled for August 21, 2002 recommending force psychotropic drugs. AT the hearing plaintiff explain to Dr. Hammer and his assistants (the involuntary medication review Comittee) the diagnosis as stated on the notice

For recommended treatment is False and misleading. I clarified how (they) could check plaintiff prison files to verify defendants diagnosis are incorrect. Plaintiff have good reasons to believe the Comittee members ruled Force medication be Forbidden. Plaintiff ask (repeatly) Cpt. Nettles, officer Ruffin, Dr. Smith, Dr. Sanders and Mrs. Gorman For the Comittee written report as a prequsite right to plaintiff due process proceeding, but plaintiff was denied the report (repeatly). Defendants Mrs. Seals and Mr. Armagost continually placed information / language in plaintiff prison file which would cause "any viewer" of plaintiff prison file to believe plaintiff is mentally ill.

The involuntary medication review comittee and mental health Staff/members at B.C.F. made

Page 4 of 29

recommendations For plaintiff to be release From any and all mental health holds, but defendants Mr. Armagost, Mrs. Seals under the direct Supervision of Cpt. Nettles and Mr. Blackledge Created others holds/restraints to hinder plaintiff liberty interest and subject plaintiff to physical and pyschological pains and injuries.

IN March 2003, plaintiff was initially scheduled to be Considered For parole, but on said date plaintiff parole hearing was post poned until he receive further notice which was in July 2004.

ON August 16, 2003 defendant B. Austin Falsely accused plaintiff of Violating and administrative Rule # (38)(Indecent exposure/Exhibitionism) to place this said

Page 5 oF 29

disciplinary infraction upon plaint
tiff. Subsequently, plaintiff was
found guilty based solely on the
arresting officer (B. Austin) unsup-
ported statements. Plaintiff went
to defendant Nettles twice, but
he refuse to listen to plaintiff
greivance. IF the hearing officer
(Sgt. Smith) had of used any amount
of fair judgement based on
officer B. Austin statements to her
testimony, the answers defendant
B. Austin answered to plaintiff
questions, surely, revealed
defendant B. Austin was not being
truthful under oath.

        Plaintiff has good reason to
believe due to Sgt. Hicks direct
involvement and under the super-
vision of defendant Nettles she
was permitted to alter the date
on exhibit # four (4). (see also
exhibit # Five (5)). Conduct the hearing on

        Page 6 of 29

September 6, 2003 on the allege rule Violation # (38) mali-Ciouly placed on plaintiff to cause him harm. She was permitted to ignore the Administrative Regula-tion # 403 (here after refered to as [A.R] # [403]), which Forbids her From participation in the discipli-nary proceeding. Defendant Nettles, Warden Holt, and Warden Boyd (all) disre-garded plaintiff written statement (attach to the hearing minutes) Verifing defendant Hicks deterance From the [A.R] #[403]. All defendant action mention above were Comitted and permitted in bad Faith.

Plaintiff was denied parole on August 16, 2004 and set off until 2009 September. Defendant C. Pruitt knows plaintiff was Sentence For burglary I and Assault II. She willingly and knowing included a description oF

Page 7 oF 29

harrassment and a rape as a ongoing problem the Victim Claims to be having with plaintiff. Defendant Pruitt knows plaintiff was not given an opportunity to refute such information she inserted into the Pre-Sentence investigation (here after refered to as (P. S. I) report. ~~insert~~ R.W.W Defendant Pruitt willingness to write and insert such language into plaintiff (P. S. I) report with out affording plaintiff the opurtunity to refute such language has impared plaintiff significantly. It is no stigma more damaging than that of a "Sex offender" labeled upon an individual with such lasting effects. This to was done in bad Faith and Capriciously with out due process of law?

   Plaintiff Cannot named all the defendant that decided with

Page 8 of 29

defendant Segrest until Plaintiff
motion For Production of documents
is granted and the proper people
are named which are/were in-
cluded in using such information
in plaintiff prison file/P.S.I. report
to deny plaintiff Fair Considera-
tion For parole. Plaintiff was
Forbidden to rebute any in-
Formation used in determining
his relief From prison and/or
to attend the hearing to deter-
mine his fate.

ON August 20, 2004 defendant
Mrs. Seals (under the supervision
of defendant Nettles and defendant
Blackledge) recommended plaintiff
Custody be raised From minimum
to maximum and refered to be
sent to a level Five (V) prison
(maximum Security) by placing
Said Security level (here after
refered to as (S.L.)) five (V) upon

Page 9 of 29

Plaintiff. Plaintiff was taken off the squad / trash detailed which permitted plaintiff to go outside the (Fenched in) perimeter and recommended plaintiff security level be raised to Five ($\overline{V}$). Defendant Seals explaination For her Course of action was said to be taken because plaintiff was denied parole.

ON August 26 2004 plain-tiff Filed an appeal Form to Warden Holt responded (only by) Signing the appeal Form. Defendant Seals detered From her initial attempt to raised plaintiff (S.L) to level Five (5) and reconsidered her recommendation and inform Plaintiff she Change her previously made decision and place plaintiff (S.L.) back to level Four ($\overline{IV}$) as originally establish.

Page 10 of 29

ON November 3, 2004, plaintiff was assaulted by inmate Solomon. This resulted in a physical fight between him and I, in which officer T. Holmes order us to stop in which we did. Defendant Babers (in the presents of Sgt. Davis, Sgt. Jackson, officer Holmes and allegely officer E. Williams) doctored a statement alleging plaintiff confess to assaulting inmate Solomon. Officer Holmes decided to comply with Lt. Babers plot and stated as his testimony that he witness plaintiff admitting to Lt. Babers " I began to fight inmate Solomon because I had not fought in a long time and I were over due for a fight".

ON December 1, 2004 plaintiff was found guilty of Rule Violation # 31 assault on another inmate. None of the defendants

Page 11 of 29

directly knowledgeable about
the incident between plaintiff
and inmate Solomon was
present at the discipliniary
hearing. Plaintiff ask about
his witnesses, the hearing
officer stated no witnesses
was requested (due to one of
my witnesses were Lt. Babers),
none of plaintiff witnesses
were recorded. Defendant
R Washington held the hearing
on the telephone. Defendant
R. Washington, Sgt. Ligon and
officer P. Philips conducted the
hearing as they wish too. The
injuries plaintiff suffers as
a result of being assaulted by
inmate solomon leaves plain-
tiff with frequent head aches.
    Plaintiff was effected
greatly be defendant Nettles
action with the aid of his
agents working within the

Page 12 of 29

(Seg.) unit From November 3, 2004 until March 3, 2005. Defendant Nettles order part of plaintiff legal mail be held in storage. (see Exhibit 6).

Plaintiff requested to see Warden Holt or Warden Boyd the entirer time he was in the (Seg.) unit, but was never permitted to see him. Defendants demonstrated what would happen to plaintiff if (he) failed to come out of the cell by using inmate Dillard as a example in December. Plaintiff listen as inmate Dillard yelled for them to stop hitting him. On or about a week later Cpt. Nettles beat Dillard again and he was transfered afterward and I have not heard any thing about him since then. Plaintiff was put into a double (Seg.) cell on three different occation where in the inmate house with plaintiff made

Page 13 of 29

aggressive threatening State-
ments. Plaintiff ask to be put
in (P.C.) status repeatly, but
his pleas came to no avail.
Officer Foster and officer Ruffin
intervene and discarded plaintiff
sick call slips on many occa-
tion when plaintiff attempted
to discuss concerns about
his medication with the nurse
he stop the conversation by
ordering the nurse to leave
the cell door with out giving
me the medication.

Defendant Nettles and Sgt.
Specks demonstrated their willing-
ness to assault an inmate and
abuse their authority. They
emphsize what would happen
to plaintiff if he did not harken
to their demands. Plaintiff wrote
the Wardens a sworn affidavit
about the last incident Plaintiff
was expose to.

Page 14 of 29

Sgt. Williams Seperate inmate Jones From plaintiff (due to) verbal indirect / direct threats inmate Jones made to plaintiff. Officer Foster took it upon himself to place plaintiff in the exercise Cage with inmate Jones a few days later. Plaintiff verbally mention to Cpt. Nettles his fears while in (seg.) Cpt. Nettles attitude was non chalant.

Plaintiff was finally transfered From Bullock Correctional Facility (B.C.F.) to Ventress Correctional Facility (V.C.F.). ON March 3, 2005. Despite the threats inmate Jones made plaintiff were transfered on the Same vehical to (V.C.F) after a few weeks of being around inmate Jones he began exhibiting that Same aggressive behavior I witness at (B.C.F.). I immediately wrote Cpt.

Monk. Lt. Dowling Call plaintiff in reference to the request Slip sent to Cpt. Monk. I explain to Lt. Dowling the history of threats From inmate Jones. Lt. Dowling took plaintiff to Mr. Bruton on March 17, 2005, Mr. Bruton was negative about my request For (P.C.) and stated he would do what he could to ensure I never make parole. Plaintiff was put in the (Seg.) Unit at (V.C.F) after two (2) weeks Plaintiff enquired about his status and Mr. Bruton Plans For him with Sgt. Seals. Plaintiff was put back in population around inmate Jones. Plaintiff was shown again certain prison official has no Concerns For plaintiff Safety (remaining Free From harm).

Plaintiff met with Mrs.

Page 16 of 29

Seals in April 2004 and again was denied a transfer. Mrs. Seals made a comment during our conversation that I had a serious demerit. I ask her what she meant which she chose to change the subject and disregarded plaintiff request for an explanation to her statement. Plaintiff also indicated he has been cleared from any and all ties to the mental health staff. I later found out there's a disease call dementia which leads plaintiff to believe that's what Mrs Seals were talking about. And that the defendants intended to avoid plaintiff complaints of illness he has suffered this past year. I found out in Title 20-50-70 to 20-50-74 that the life expectancy for a dementia victim is (6) to (8) years after onset. Plaintiff

Page 17 of 29

deals with the mental anxiety and wonder has defendants decided to go (so far) in their retaliation, to enhance plaintiff to death in the next six (6) to eight (8) years or maybe sooner. From the use of the pyschotropic drugs defendant Dr. Sander prescribe plaintiff, plaintiff now suffers from many unexplain physical ailments.

On thursday March 10, 2005 plaintiff was threaten with violence by Lt. Holland in the kitchen (at breakfast) due to the written shaving profile the Nurse at (V.C.F.) rewritten the profile plaintiff had from (B.C.F.). Lt. Holland referred plaintiff to Sgt. Cargle, while Lt. Holland talk with the white/male (W/M) officer that initially question plaintiff about his shaving profile. During the conversation

Page 18 of 29

between plaintiff and Sgt. Cargle Lt. Holland return and ask to see the sharing profile again. Plaintiff was taken into the office in the Kitchen and threaten by Lt. Holland which conversation took placed between plaintiff and Lt. Holland as following:

"Lt. Holland -- If you ever be told to leave this Kitchen and dont leave you are going to get some action. Plaintiff -- Some action! Lt. Holland -- Yes, some action! If you be told to leave and don't leave you going to get some action. (she gave me the profile back and I return to the dorm I was housed in)".

Page 19 of 29

On Friday, March 11, 2005 (breakfast time) Sgt. Cargle stop me in the Kitchen line (while I held the new profile and my I.D. card in my hand) she ask me why I had hair by my ears (side burns). I replied, "I shave it at the same time I shave my beard. Sgt. Cargle stated, "give me that profile, I'm going to show you how to read a profile". She pointed at the profile emphasizing no hair is to be on my (side burns) or (top lip). Sgt. Cargle further stated, "if you come in here again like this you won't be eating". She gave me the profile and I receive a tray, ate, and left.

It was at this point plain tiff realizes Lt. Holland had the Nurse to alter plaintiff shaving profile into her specifi-

Page 20 of 29

cation, not as the doctor had Suggested the profile should read due to plaintiff infected Face

On Wednesday March 16, 2005. Sgt. Cargle told me I was really pushing it. I handed (her) the profile, but she would not take it. Sgt. Cargle and plaintiff Conversation transpired as following:

" Sgt. Cargle -- When are you going to shave?
Plaintiff -- I'll shave today if you want me too.
Sgt. Cargle -- So, when are you going to shave?
Plaintiff -- Today.
Sgt. Cargle -- You just keep on pushing it".

Sgt. Cargle waved her hand in my face injesture For me to

Page 21 of 29

get out of her face. Plaintiff
Went down the line, receive a
tray, ate and left. Plaintiff Knows
Not When Sgt. Cargle or/and
Lt. Holland shall initiate "un-
necessary" physical force upon
plaintiff. Where in, plaintiff will
be accused of an assault on
them as he has observe from
their co-workers common prac-
tices to shift the blame on
the inmate. Plaintiff is convince
collectively defendant Lt. Holland
and Sgt. Cargle has intervened
into plaintiff medical treatment
remedies, as well as, harrass and
threaten plaintiff in the describe
manners. Plaintiff written notices
to their supervisor(s) remain
unanswered and Lt. Holland
and Sgt. Cargle action unchecked.

Plaintiff was intentionally allowed
to be around two (2) inmates

Page 22 of 29

which had tested Positive and/
or had been prescribe medica-
tion For (T.B.). Inmate Jones
started taken (T.B.) medication
after plaintiff was moved out
of the Cell with him Plaintiff
later Found out inmate Jones
suspected he Contracted the
disease From the inmate that was
in the Cell a week or two (2) before
Plaintiff was force to be housed
with inmate Jones (orders of
defendant Nettles). Plaintiff
later found out inmate Johnny
Head was taken (T.B) medica-
tion and had tested positive
as well. Inmate Head walk with
Plaintiff on the exercise yard
and talked directly in Plaintiff
Face.
          Plaintiff Complained to the
Prison Health Services (Here after
refered to as (P.H.S.)) employees

Page 23 of 29

but they Failed to give plain-
tiff any medical treatment/
attention Concern (T.B) symptoms.
Plaintiff ask For medical
help / treatment at (B.C.F.)
and at (V.C.F.) on the
Following dates and never re-
ceive the proper treatment.
Plaintiff requested treatment on
November 10th, 17th, 22nd, 23rd
24th, 30th of 2004; December
2nd, 7th, 11th, 16th, 21st of 2004.
The Days plaintiff was permitted
to see doctor siddaq and (P.H.S)
employees they refuse to give
plaintiff Copies of the Sick Call
Slips (as a Common practice).
If the defendants would of
Followed (B.C.F.) and (P.H.S.)
polices pertaining to health
Care Services.

     Plaintiff ask For his Sugar
level Check (tring to diagnose his
Sickness/illness due to defendants

Page 24 of 29

neglect) plaintiff still seeks explanation For symptoms of out break of sores on legs, back hands, face and head, Plaintiff have sent complaint Forms to the (P.H.S.) staff and institution officials at (B.C.F.) and (V.C.F.). Plaintiff complaints has been minimized on several occation and totally disregarded plaintiff complaints in part or (and (as a whole) on others.

P.H.S. medical staff has been directly influence by the A.D.O.C. officials which plaintiff believes ( to be why(?)) plaintiff is receiving so very little treatment and at times no treatment at all pertaining to reported sickness.

On April 26, 2005 the (P.H.S.) medical staff discarded plaintiff of the allergy reaction

Page 25 of 29

the (T.B.) Skin test has had on him, after Consecutively taken Five (5) T.B. Skin test Within the past 10 months. Lt. Dowling order plaintiff to be lock up in the seg unit. Placed a disciplinary infraction upon plaintiff. Lt. Dowling motives are demonstrated to show plaintiff he Can do what he wants to even When the R.W.W. plaintiff health is at stake.

## Relief Sought

That the Court place an injunction / order on the defendants to have the A.D.O.C. officials to Sign a legal mail log For any and all of plaintiff incoming and out going legal mail. For this Court to issue a restraining order upon defendants to preserve plaintiff life & 18 usc 5003

Page 26 of 29

and section 30-5-1, et. seq. (Ala. Code 1975), as afforded by the United States Constitution Amendment Fourteen (14). Injunction For excessive and inappropriate use of psychotropic drugs with intent to Conspirer to Commit murder. Criminal charges Violation 18 USC 242. Cruel and Unusual punishment (6-11-20) (3,000,000) Punitive Damages in the amount of (3,000,000). Pupensitory damages (3,000,000). Monatory damages (3,000,000). Personal injury (3,000,000). Psychological damages (3,000,000). Deliberate indifferences (3,000,000). Injunction For denying (P.C.) (6-6-500) to (6-6-503). 42 USC 1985 Conspiracy. 42 USC 1997 Violation of an institutionlize person. Order defendants to expunge the False information

Page 27 of 29

From plaintiff prison file / P.S.I. report Concerning the allege rape.

Where Fore, the Court Considered this Complaint For Jury trial and that Cost be assessed against the defendants ( Cost of Court, Cost of Copies, Cost of postage, e.g., al.). Any and all other relief that is deemed by the Court.

Done this the 25th day of July 2005.

Respectfully Submitted,

Richard W. Wright, Sr.

Richard Wayne Wright, Sr.,
Pro - Se

Plaintiff's Address

Richard Wayne Wright, Sr.
A.I.S # 187140 Dorm 6A Bed 2

Page 28 of 29

Ventress Correctional Facility
P.O. Box 767
Clayton, Ala. 36016

## CERTIFICATE OF SERVICE

This is to certify that I am the plaintiff in the above encaptioned matter and I have this _25th_ day of _July_, 2005, sent this Complaint For filing, to the Clerk of the Court, by placing same in the United States Mail, First Class postage pre paid and properly addressed this the _25th_ day of _July_, 2005.

Respectfully Submitted,
_Richard W. Wright, Sr._
Richard Wayne Wright, Sr.,
Pro-Se.

Page 29 of 29