IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RICHARD WAYNE WRIGHT, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 2:05-CV-439-A |
| ) | |
| SYLVESTER NETTLES, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
RESPONSE TO ORDER TO SHOW CAUSE**

COME NOW Defendants TAHIR SIDDIQ, MD ("Dr. Siddiq"), KATHERINE TAYLOR, LPN ("Nurse Taylor"), SAMUEL RAYAPATI, MD ("Dr. Rayapati"), NETTIE BURKS, HSA ("Ms. Burks"), CELESTE HUNTER, LPN ("Nurse Hunter") and PRISON HEALTH SERVICES, INC. ("PHS," collectively with Dr. Siddiq, Nurse Taylor, Dr. Rayapati, Ms. Burks and Nurse Hunter, the "PHS Defendants"), and pursuant to this Court's Order dated October 14, 2005, submit the following Memorandum of Law in Support of its Response to Order to Show Cause.

**I.   STATEMENT OF UNDISPUTED FACTS**

On or about May 11, 2005, Richard Wayne Wright, Sr. ("Plaintiff"), an inmate currently incarcerated at Ventress Correctional Facility ("Ventress") filed a Complaint pursuant to 42 U.S.C. § 1983, which was subsequently amended on July 28, 2005, alleging that the more than fifty (50) Defendants[1] named in the above-styled action violated his constitutional rights. (See

---

[1] In his Amended Complaint, Plaintiff identifies the following individuals as Defendants in this case: Tahir Siddiq M.D., Williams Sanders, Sherry Seals, Selvester Nettles, Larry Ligon, Paul Phillips, Walton Solomon, Mose Foster, Dr. Hammer, Alberta Williams, Gwendolyn Babers, Officer Rudolph (B/F), Prison Health Services (P.H.S.), Brenda Austin, Robert Washington, Elizabeth Laseter, Anthony Jackson, Melvin Austin, Mrs. Biven-tutt, Sgt. Davis, Mrs. Gormon, Dr. Smith, Nurse Taylor, Alex Rudolph, Keith Armagost, Harvey Ruffin, Sgt. Specks, Officer Ellis, Officer Franklin, Charles Blackledge, Eric Williams, Timothy Holmes, Brian Hampton,

85014.2

Complaint; Amended Complaint). As a result, the Court required the PHS Defendants to provide a Special Report and Answer to Plaintiff's Amended Complaint on or before November 14, 2005. (See Order dated Aug. 4, 2005; see also Order dated Aug. 31, 2005). Among other claims, Plaintiff asserts that he has been forced to take psychotropic medications[2] against his will. (See Amended Complaint at pp. 3-5 of 29). In an attempt to prevent the Defendants from forcing him to take these medications, Plaintiff filed the Motion for Preliminary Injunction (the "Motion") that is presently before this Court. (See Plaintiff's Motion for Preliminary Injunction).[3]

In his Motion, Plaintiff alleges he is presently being "*inject[ed with]* mind altering drugs]" and "malicious[ly] . . . induce[d]" to take psychotropic drugs. (Id. at ¶¶ 1-3 (emphasis supplied)). Plaintiff requests this Court to "issue such order upon defendants preventing them from induc[ing] plaintiff with p[sy]chotropic drugs again without due process of law." (Id. at ¶ 3). Further, Plaintiff states in his Motion that he seeks to prevent future injections of psychotropic drugs into his body as he claims were done in "[October 2001]" in order to "prevent a re-occurrence of said action." (Id. at ¶ 1).

The undisputed evidence submitted in support of this Response of PHS Defendants demonstrates that Plaintiff is not entitled to the injunctive relief sought. Nettie Burks is a licensed nurse and the current Health Services Administrator at Ventress. (See Affidavit of

---

Johnny Bailey, Micheal Strickland, Janet Hicks, Mark Bruton, Sharon Holland, Camella Cargle, Nurse Hunter, Dr. Rayapati (M.D.), Mr. Jenkins, Kenneth Cargle, Veronica Stringer, John Dowling, M.L. Monk (COS II), N. Burks (HAS), Carolyn Longmire, Lt. Taylor, Officer Pullum (B/M)(COI), William C. Segrest, Carolyn Miles-Pruitt (collectively, the "Defendants").

[2] Psychotropic medications are those which alter brain function, resulting in temporary changes in perception, mood, consciousness or behavior; these drugs are also used to treat neurological and psychological illnesses. (See Affidavit of Nettie Burks ("Burks Aff.") ¶ 4). A true and correct copy of the Affidavit of Nettie Burks is attached hereto as **Exhibit "A"** and is incorporated herein by reference.

[3] Plaintiff titled this document a Motion for Injunction Preventing the Use of Psychotropic Drugs Implement Upon Plaintiff. (See Motion for Preliminary Injunction, Oct. 6, 2005). The Court construed Plaintiff's document as a Motion for Preliminary Injunction. (See Order, Oct. 14, 2005).

85014.2

2

Nettie Burks ("Burks Affidavit") at ¶ 2). Mental Health Management ("MHM"), not PHS, is the mental health care provider contracted by the Alabama Department of Corrections to provide mental health care for inmates located in correctional institutions throughout Alabama. (See Burks Affidavit at ¶ 5). To the present date, however, MHM has not been properly served by the Plaintiff so as to be properly brought before this Court. MHM is not a subcontractor of PHS, and PHS has no authority to direct and/or control any activities conducted by MHM. (Id.). Because psychotropic drugs are aimed at correcting mental health problems, MHM alone is responsible for ordering and prescribing any and all psychotropic medications to inmates with mental health problems. (Id.). PHS is not responsible in any way for ordering and/or prescribing any psychotropic medications to inmates at Ventress. (Id. at ¶ 6). No PHS physician and/or other PHS medical personnel have prescribed any psychotropic medications for the Plaintiff. (Id.). PHS' only role in providing psychiatric services at Ventress is its administration of prescribed psychotropic medications through the pill call process. (Id.). Pill call is the process by which inmates at Ventress receive prescribed medication. (Id.). At Ventress, pill call is conducted four (4) times per day at 2:30 a.m., 9:15 a.m., 3:00 p.m. and 9:00 p.m. (Id.). When inmates are summoned to pill call, each inmate who has been prescribed medication appears before a pill call window located in the Health Care Unit and a member of the PHS medical staff hands each inmate his prescribed medications. (Id.). During pill call, PHS provides inmates with psychotropic medications prescribed by MHM that are administered in pill form. (Id.). PHS nurses and other medical personnel may not administer any other form of psychotropic drugs (including injections) which are prescribed by MHM if MHM personnel are present. (Id.).

The PHS medical staff generates a Medication Administration Record ("MAR") for each inmate who receives medication through the pill call process. (Id. at ¶ 7). MARs document the

85014.2                                            3

specific types of medication inmates receive on a day-to-day basis as well as the exact dates when an inmate receives any prescribed medications. (Id.). MARs are generated for each month in which an inmate receives prescribed medication and provide space for the medical staff to confirm in writing the days within a month when prescribed medication is provided to an inmate. (Id.). When medicines are administered to inmates during pill call, the administering nurse signs or initials in the space provided for the applicable date of the month on an inmate's MAR, confirming provision of prescribed medication. (Id.). In short, an inmate's MARs record when prescription medication (including psychotropic medication) is provided, how much medication is provided, the date on which the medication is provided and the time period over which an inmate receives prescribed medication. (Id.). As indicated by Plaintiff's MARs, he has not received any psychotropic medication of any kind since June of 2003. (Id. at ¶ 8, Ex. A). In June, 2003, Plaintiff was prescribed and received Haloperidol, a psychotropic medication. (Id.). Plaintiff has not been prescribed or received Haloperidol since June 29, 2003. (Id.).

Plaintiff does not have a current prescription for any psychotropic medication and is currently not receiving any psychotropic medication of any kind from PHS. (Id. at ¶ 9). According to Plaintiff's Mental Services Psychiatric Progress Notes dated June 20, 2005, Plaintiff's last evaluation by the mental health staff at Ventress did not result in any psychotropic medications being prescribed for him and a member of the mental health staff noted, "[Plaintiff] is not on any medicines." (Id. at ¶ 9, Ex. B). This is the last entry in Plaintiff's mental health records and there is no indication that Plaintiff has been placed back on psychotropic drugs since that time. (Id.).

Plaintiff has a history of violent behavior. (Id. at ¶ 10). A Psychological Interview/Data Entry Form dated May 22, 1996, indicates that Plaintiff's mental health must be managed in light

of his prior conviction of burglary, resulting in an assault on and injury to the victim. (Id. at ¶ 10, Ex. C). An Emergency Treatment Form dated November 3, 2004, indicates that Plaintiff admitted, "I was fighting. I got a few bumps and bruises." (Id. at ¶ 10, Ex. D). Another document referencing the same incident entitled Referral to Mental Health also dated November 3, 2004, specifies that Plaintiff needed to be referred to mental health because he was not currently on psychotropic medications and, as a result, he was "picking fights" with other inmates. (Id. at ¶ 10, Ex. E). On this same document, an evaluation of Plaintiff's mental status indicates that his demeanor was "Hostile, angry." (Id.).

II. **PLAINTIFF FAILS TO SATISFY HIS BURDEN OF ESTABLISHING THAT EACH AND EVERY ELEMENT OF PROOF REQUIRED FOR THE ISSUANCE OF A PRELIMINARY INJUNCTION HAS BEEN MET.**

Before a preliminary injunction may be issued, the individual seeking the injunction must demonstrate each and every one of the following elements:

> (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) the threatened harm to the plaintiff outweighs any harm that the injunction may cause the defendant; and (4) the public interest will not be disserved by the grant of a preliminary injunction.

Laube v. Haley, 234 F. Supp. 2d 1227, 1230 (M.D. Ala. 2002); Alabama v. United States Army Corps of Eng'rs, No. 03-16424 & 05-11123, 2005 U.S. App. LEXIS 20058, at *22 (11th Cir. 2005); Parker v. State Bd. of Pardons and Paroles, 275 F. 3d 1032, 1034-35 (11th Cir. 2001). As the Eleventh Circuit recognized previously, the decision to grant or deny a preliminary injunction "is within the sound discretion of the district court and will not be disturbed absent a clear abuse of discretion." Wall v. Ferrero, No. 04-16516, 2005 U.S. App. LEXIS 15769, *3-4 (11th Cir.

2005);[4] Palmer v. Braun, 287 F. 3d 1325, 1329 (11th Cir. 2002). While the Court is vested with discretion in ruling upon a motion for preliminary injunction, "a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion" as to each of the four (4) prerequisites. See McDonald's Corp. v. Robertson, 147 F. 3d 1301, 1306 (11th Cir. 1998) (internal citations and quotations omitted); see also Texas v. Seatrain Int'l, S.A., 518 F. 2d 175, 179 (5th Cir. 1975) (grant of preliminary injunction "is the exception rather than the rule," and the movant must clearly carry the burden of persuasion).

The long-standing law in the Eleventh Circuit requires Plaintiff to establish each and every element of the above-mentioned four (4) part test order to obtain preliminary injunctive relief. In the present case, Plaintiff has failed to present any evidence to the Court demonstrating that even a single element of this test has been met.

    **A.**     **Plaintiff fails to establish that he has a substantial likelihood of success on the merits of the pending case.**

The moving party's failure to demonstrate a "substantial likelihood of success on the merits" may defeat the party's claim, regardless of the party's ability to establish any of the other elements. Church v. City of Huntsville, 30 F. 3d 1332, 1342 (11th Cir. 1994). As evident from Plaintiff's Amended Complaint, the Plaintiff is attempting to state a claim against PHS Defendants for an alleged delay and/or denial of medical care. (See Amended Complaint at pp. 17-25 of 29). The Eighth Amendment[5] to the United States Constitution governs the conditions

---

[4] A true and correct copy of Wall v. Ferrero, No. 04-16516, 2005 U.S. App. LEXIS 15769 (11th Cir. 2005) is attached hereto as **Exhibit "B"** and is incorporated herein by reference.

[5] Though liability arising out of the treatment of pretrial detainees triggers Fourteenth Amendment considerations, "the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner . . ." See Hamm v. DeKalb County, 774 F. 2d 1567, 1573-74 (11th Cir. 1985). To the extent Defendants rely upon any

of confinement for prisoners and the treatment of these prisoners during the term of their incarceration. Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 31, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993)); see also Whitley v. Albers, 475 U.S. 312, 327, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986); Rhodes v. Chapman, 452 U.S. 337, 345-46, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981) (writing that the standard of "cruel and unusual punishments" applies to prison conditions). An alleged Eighth Amendment violation may be actionable under 42 U.S.C. § 1983.[6] Courts have devoted an extraordinary amount of time clearly defining the requirements for asserting and succeeding upon a claim for an Eighth Amendment violation under § 1983.

In its well-known opinion in Estelle v. Gamble, the United States Supreme Court instructed that an Eighth Amendment claim only exists when a prison official engages in the "unnecessary and wanton infliction of pain." 429 U.S. 97, 105, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The Estelle Court interpreted this phrase to mean that prison officials must not act with "deliberate indifference to serious medical needs of prisoners." Id. Subsequent decisions by the Supreme Court and Eleventh Circuit have described the Eighth Amendment standard as including both "objective" and "subjective" components. See e.g. Farmer, 511 U.S. 825 at 834, 837; Chandler v. Crosby, 379 F.3d 1278, 1289-90 (11th Cir. 2004).

---

cases addressing the application of the Fourteenth Amendment in the prison context, such cases are equally applicable in this case.

[6]    42 U.S.C. § 1983 provides, in pertinent part,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

  **1.** **Plaintiff cannot establish that PHS Defendants acted with "deliberate indifference" to any "serious medical need," thus precluding his success on the merits.**

  The objective component of the Eighth Amendment analysis requires a prisoner to demonstrate the existence of a condition, act or omission which is sufficiently egregious to violate the Eighth Amendment. See Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). The underlying conduct or condition must be "extreme" and pose "an unreasonable risk of serious damage to his future health," if left unchecked. Chandler, 379 F. 3d at 1289-90 (quoting Hudson, 503 U.S. at 9, 112 S. Ct. at 1000, 117 L. Ed. 2d 156) (other citation omitted). In the context of a claim for delayed or refused medical treatment, a prisoner must establish the existence of "a serious medical need." Chandler, 379 F.3d at 1289-90; Farrow v. West, 320 F. 3d 1235, 1243 (11th Cir. 2003). The long-standing definition of a "serious medical need" in the Eleventh Circuit is as follows: a condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow, 320 F. 3d at 1243 (citing Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994) (internal quotations omitted)). Additionally, the serious medical need must be such that, if left untreated, it "pos[es] a substantial risk of serious harm." Farmer, 511 U.S. at 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811. The burden falls squarely upon Plaintiff to allege and ultimately establish the existence of a serious medical need. See e.g. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

  In his Amended Complaint, Plaintiff alleges an array of claims, each equally lacking in merit and none meeting the strict definition of a "serious medical need." (See generally Amended Complaint). Plaintiff's claims against the Defendants include: (1) intercepting Plaintiff's outgoing mail (Id. at pp. 1-2 of 29); (2) requiring Plaintiff to involuntarily take

psychotropic medications (Id. at pp. 3-5 of 29); (3) falsely accusing Plaintiff of violating an administrative rule against indecent exposure (Id. at pp. 5-7 of 29); (4) falsely altering the crimes for which Plaintiff is incarcerated, thereby hindering his attempts to be paroled (Id. at pp. 7-9 of 29); (5) raising Plaintiff's security status from minimum to maximum (Id. at pp. 9-10 of 29); (6) falsifying statements made by Plaintiff (Id. at pp. 11-12 of 29); (7) harassing Plaintiff (Id. at pp. 13-16 of 29); (8) causing Plaintiff to develop dementia (Id. at 17-18 of 29); (9) altering Plaintiff's shaving profile resulting in threats from Alabama Department of Corrections' officers (Id. at pp. 18-22 of 29); (10) disregarding Plaintiff's complaints concerning tuberculosis skin tests (Id. 22-26 of 29); (11) denying Plaintiff medical treatment (Id. at p. 24 of 29); and (12) disregarding Plaintiff's complaints of sores on his legs, hands, back, head and face (Id. at p. 25).

Despite the variety and numerosity of Plaintiff's allegations, he fails to identify any "serious medical need" he has experienced or been diagnosed with during his incarceration or which was not treated by PHS Defendants. Further, few if any of the claims directly involve the PHS Defendants. The only claims that involve PHS Defendants and could potentially involve "serious medical needs" are Plaintiff's claims that PHS Defendants disregarded complaints about tuberculosis skin tests, caused him to develop dementia and otherwise denied him medical treatment. (Id. at pp. 17 to 25 of 29). While these claims will be addressed at a future time, the sole issue presently before this Court constitutes Plaintiff's request that the Court enjoin Defendants from prescribing and/or administering any psychotropic medications to Plaintiff. (See Motion for Preliminary Injunction ¶¶ 1-3). Plaintiff does not allege that PHS failed in any way to provide him with any psychiatric and/or mental health care. (Id.). Plaintiff does not allege he is currently suffering or has at any time suffered from any psychiatric or mental health condition. (Id.). In short, Plaintiff's Motion is devoid of any allegation that he has experienced

any "serious medical need," as defined by the Eleventh Circuit. As such, the Plaintiff has failed to establish the existence of a "serious medical need," thereby failing to demonstrate the first element of proof required for the issuance of the requested injunctive relief. Hence, Plaintiff's Motion is due to be denied on its face.

>   **2.   Plaintiff does not allege or even suggest that the PHS Defendants "knowingly" disregarded an excessive risk to his health or safety, thereby precluding his success on the merits.**

Even if Plaintiff experienced a serious medical need during his incarceration, he must also establish the "subjective" component of an Eighth Amendment violation. Plaintiff must prove that PHS Defendants acted with "deliberate indifference." See e.g. Farmer, 511 U.S. at 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811. In Farmer, the Supreme Court wrote "deliberate indifference" exists when "the official knows of and disregards an excessive risk to inmate health or safety . . . ." Id.; see also Wilson v. Seller, 501 U.S. 294, 303, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991). The mere fact that a prison official should have known of or perceived a risk is of no consequence under the Eighth Amendment analysis. Farmer, 511 U.S. at 838, 114 S. Ct. 1970, 128 L. Ed. 2d 811. It is incumbent upon a prisoner asserting a § 1983 claim to establish "conscious or callous indifference" on the part of the prison official. See e.g. Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); Brown v. Hughes, 894 F. 2d 1533, 1537-38 (11th Cir. 1990). In sum, a prisoner's § 1983 claim for an alleged delay in medical treatment cannot survive summary judgment unless the inmate produces evidence "of the prison official's subjective awareness" of the alleged medical condition and an "intentional refusal [by the official] to provide . . . care." Id.; Campbell v. Sikes, 169 F. 3d 1353, 1364 (11th Cir. 1999) (quoting Steele v. Shah, 87 F.3d 1266, 1269 (11th Cir. 1996)); Hill, 40 F. 3d at 1186).

Without evidence of this "specific intent," a prisoner's § 1983 claim cannot succeed. Steele, 87 F.3d at 1269.

Courts have also identified the specific type of alleged conduct which does *not* rise to the level of "deliberate indifference." In Crosby, the Eleventh Circuit held that a prisoner's discomfort does not give rise to an Eighth Amendment violation. 379 F.3d at 1295 (citations omitted). Moreover, liability under the Eighth Amendment cannot exist for negligence in diagnosing or treating an inmate's alleged medical condition. Estelle, 429 U.S. at 106, 97 S. Ct. at 292. The Eighth Amendment does not prohibit or provide any remedy for any "accidental inadequacy . . . or even medical malpractice[7] actionable under state law." Taylor v. Adams, 221 F. 3d 1254, 1258 (11th Cir. 2000) (quotations and citation omitted).

In cases such as the present when a prisoner actually receives medical treatment, courts have altered their analysis of § 1983 medical claims. The Eleventh Circuit has instructed courts to be hesitant to find an Eighth Amendment violation when officials provide medical care to prison inmates. McElligott v. Foley, 182 F. 3d 1248, 1259 (11th Cir. 1999) (citing Waldrup v. Evans, 871 F. 2d 1030, 1035 (11th Cir. 1989)). While the Eleventh Circuit has addressed at length inmate's claims for injunctive relief, see. e.g. Hinson v. Edmond, 192 F. 3d 1342, 1348 (11th Cir. 1999); Hill, 40 F.3d 1176, 1188-1189 (11th Cir. 1994); Harris v. Coweta County, 21 F.3d 388, 393-394 (11th Cir. 1994), Plaintiff does not allege that any delay occurred in the provision of his medical treatment. Indeed, the basis for Plaintiff's Motion is not the nature or extent of the medical treatment he received or the timing of the treatment received, but the fact that treatment was provided by MHM's mental health staff.

---

[7] As the Supreme Court concluded, "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Estelle, 429 U.S. at 107, 97 S. Ct. 285, 50 L. Ed. 2d 251.

85014.2                                        11

Plaintiff clearly cannot establish PHS Defendants acted to intentionally and deliberately disregard any "serious medical need." As a matter of common sense, Plaintiff should not be able to allege that he is receiving too much treatment, as he does in his current Motion regarding his assertion that he has been over-treated with psychotropic medications, and then also argue that PHS Defendants have intentionally disregarded a "serious medical need." (<u>See</u> Motion for Preliminary Injunction at ¶¶ 1-3). If anything, Plaintiff has admitted, by asserting that he is receiving too much medication that Defendants have done more than is medically necessary in order to assure that his physical and mental health are properly treated. (<u>Id</u>.). Based upon the foregoing, Plaintiff fails to establish that Defendants have acted with deliberate indifference to his "serious medical needs" and, therefore, is not entitled to obtain the injunctive relief requested.

    **3.    Plaintiff cannot establish that he has suffered a "physical injury" as is required by the Prison Litigation Reform Act ("PLRA").**

The PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of *physical injury*." 42 U.S.C. § 1997e(e) (emphasis added).

Under the plain language of the statute, Plaintiff has failed to assert that he has suffered a "physical injury" at the hands of any of the Defendants, particularly PHS Defendants. Plaintiff's current Motion is based solely on his assertions that he has been forced to take drugs aimed at correcting his mental health, and in no way alleges that these drugs have caused him to suffer physical injury. (<u>See</u> Motion for Preliminary Injunction at ¶¶ 1-3). Likewise, Plaintiff's Amended Complaint does not allege that the Defendants have caused him to suffer physical harm. (<u>See generally</u> Amended Complaint). This is yet another reason that Plaintiff cannot prove that he will be successful on the merits of his Amended Complaint, and necessitates the

denial of this Motion because Plaintiff has failed to meet the first element required in establishing his right to a preliminary injunction.

  **B.**   **Plaintiff fails to demonstrate there is a substantial threat of irreparable harm if the injunction is not granted.**

"The absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." Siegel v. Lepore, 234 F. 3d 1163, 1176 (11th Cir. 2000). As evidenced by the affidavit submitted by Nettie Burks, Plaintiff's MARs indicate that he as not received psychotropic drugs since June 2003. (See Burks Affidavit at ¶ 7, Ex. A). And, Plaintiff's medical records expressly state that he has not been prescribed or otherwise administered psychotropic drugs since June 20, 2005. (See Burks Affidavit at ¶ 7, Ex. B). Plaintiff went beyond these dates, stating that he seeks to prevent the administration of psychotropic drugs as was done during "[October 2001]." (See Motion for Preliminary Injunction at ¶ 1). Plaintiff admits that, as of April 2004, "[I have] been cleared from any and all ties to the mental health staff." (See Amended Complaint at p. 17 of 29). Thus, Plaintiff's Motion requiring Defendants to cease prescribing and/or administering these drugs is moot. Not only does the lapse in time remove the threat of Plaintiff suffering any irreparable harm, but also common sense dictates that Plaintiff cannot be harmed by medications that he is not currently taking and has not taken for over two (2) years. (See Burks Affidavit at ¶ 7, Ex. A & B; see also Motion for Preliminary Injunction at ¶ 1).

Even if this Court finds that Plaintiff's "alleged injury likely would recur," Washington v. Harper, 494 U.S. 210, 219 (1990), the present issue is moot as it relates to PHS Defendants and there is no threat of irreparable harm to Plaintiff that may be caused by PHS Defendants because PHS Defendants have no control over prescribing or ordering the administration of psychotropic drugs. (See Burks Affidavit at ¶¶ 5-6). MHM and its physicians and employees operate on a

full-time basis (five (5) days a week, eight (8) hours a day) to care and provide treatment for inmates' mental health needs. (Id. at ¶ 5). As such, MHM officials are the only persons authorized to prescribe drugs aimed at correcting mental and/or psychological illnesses. (Id. at ¶¶ 5-6). The only role PHS Defendants have in caring for the mental health of inmates involves administering those drugs to inmates that MHM prescribes that can be ingested in pill form (not injections). (Id. at ¶ 6).

Thus, it is clear that MHM, not the PHS Defendants, is the party responsible for prescribing and ordering the administration of psychotropic drugs (Id. at ¶¶ 5-6). However, to the present date, Plaintiff has failed to properly serve MHM with the Complaint and/or Amended Complaint. As such, the PHS Defendants should not be held responsible and enjoined from engaging in an activity that they are not currently engaged in and have no authority to engage in at any time in the future.

    **C.**    **Plaintiff fails to establish that the harm caused to him by not granting the injunction outweighs the harm that may be caused to Defendants if the injunction is granted.**

Though Plaintiff will likely suffer no harm if the injunction is not granted, the potential harm that may be caused to PHS Defendants is significant. Even if MHM were currently prescribing and ordering the administration of psychotropic drugs to Plaintiff (though his medical records indicate they are not), his history of violence and fighting while in prison may justify MHM in prescribing and administering these drugs in the future. (See Burks Affidavit at ¶ 8, Ex. C, D & E). The United States Supreme Court has held that forcing an inmate to take medication may be appropriate, depending on the circumstances, due to the special nature of the prison environment. See generally Washington, 494 U.S. 210. Specifically, the Court held that "given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with [psychotropic] drugs against his will,

if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." Id. at 227. Further, the Court stated, "[p]rison administrators have not only an interest in ensuring the safety of prison staffs and administrative personnel, but the duty to take reasonable measures for the prisoner's own safety." Id. at 225-26 (internal citation omitted).

The Plaintiff has a history of violence even going back to the fact that he is currently incarcerated for burglary and assault. (See Amended Complaint at pp. 7-8 of 29). Further, his medical records indicate that his violent behavior, for which physicians have continually referred the Plaintiff to mental health, has continued in prison, resulting in fights and assaults on other inmates. (See Burks Affidavit. at ¶ 8, Ex. C, D & E). Given Plaintiff's history of violence, if it were to become medically necessary for him to take psychotropic drugs or if the need to prescribe and/or administer these drugs arose in the near future, PHS Defendants, the remaining Defendants, Alabama Department of Corrections' employees and personnel, other inmates, other individuals visiting the premises and the Plaintiff himself could potentially be put in danger of harm. (See Burks Affidavit. at ¶ 8, Ex. C, D & E). If the Court grants the Motion, thereby limiting the available forms of treatment Defendants have access to in caring for Plaintiff, an inmate with a mental illness, the Court would be tying the hands of those physicians and other medical personnel who have the ability to protect the aforementioned individuals through appropriate medical treatment.

> **D.  Plaintiff fails to demonstrate the public interest will not be disserved by the issuance of a preliminary injunction.**

Moreover, by no means can Plaintiff show that it is in the public interest to grant the requested preliminary injunction. Rather, it would disserve the public interest by removing the public's assurance that inmates are properly treated for mental illnesses and that those treating or otherwise in direct contact with inmates having a violent nature, such as the Plaintiff, (See Burks

Affidavit at ¶ 8, Ex. C, D & E), are afforded all available means of safety and protection from such inmates with a violent demeanor. See generally Washington, 494 U.S. 210. Furthermore, the public interest would be disserved by allowing inmates, rather than trained medical professionals, to make medical decisions in general, but particularly medical decisions which may ultimately result in harm to a large group of individuals (PHS Defendants, the remaining Defendants, Alabama Department of Corrections' employees and personnel, other inmates, other individuals visiting the premises and the Plaintiff himself) if an inmate with a mental illness is simply allowed to file a motion to cease his medical treatment.

### III. ANY PRELIMINARY INJUNCTIVE RELIEF AFFORDED TO THE PLAINTIFF IS LIMITED BY THE PLRA.

Under the PLRA, "[p]reliminary injunctive relief shall automatically expire on the date that is 90 days after its entry," unless the court makes specific findings that the relief "extend[s] no further than necessary to correct the violation . . . [the] relief is narrowly drawn . . . and [the relief] is the least intrusive means necessary to correct the violation." 18 U.S.C. § 3626(a)(2).

Should the Court grant the Plaintiff's Motion, its duration would be short-term, potentially only ninety (90) days. Id. First and foremost, as discussed above, Plaintiff fails to identify any constitutional violation arising out of the administration of psychotropic medications to him. Second, the relief sought by Plaintiff is extremely broad and poses health, safety and security risks not only to Plaintiff, but also to other inmates incarcerated with Plaintiff in light of his history of violence against others. Finally, Plaintiff has asked this Court to take the most intrusive approach in issuing injunctive relief, i.e. assuming the role of treating physician and psychiatrist and limiting the types of medications that may be prescribed for Plaintiff for his mental health and medical conditions. For these reasons, there is simply no basis for Plaintiff's request that his preliminary injunctive relief extend for a period of more than ninety (90) days.

**IV.    CONCLUSION**

Based on the foregoing facts and legal arguments, PHS Defendants request that this Court declare Plaintiff's Motion for Preliminary Injunction as moot, or in the alternative, that the Court deny Plaintiff's Motion for Preliminary Injunction.

Respectfully submitted on this the 28th day of October, 2005.

/s/ William R. Lunsford
One of the Attorneys for PHS Defendants

**OF COUNSEL:**

David B. Block
William R. Lunsford
BALCH & BINGHAM LLP
Post Office Box 18668
Huntsville, AL 35804-8668
Telephone: (256) 551-0171
Facsimile: (256) 512-0119

**CERTIFICATE OF SERVICE**

      I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected by email to the CM/ECF participants or by postage prepaid first class mail to the following this the 28th day of October, 2005:

Richard Wayne Wright, Sr.
AIS# 187140
Ventress Correctional Facility
P.O. Box 767
Clayton, AL 36016-0767

Gregory Marion Biggs
Department of Corrections
P.O. Box 301501
301 Ripley Street
Montgomery, AL 36130

Steven Mallette Sirmon
Alabama Board of Pardons & Paroles
301 South Ripley Street
P.O. Box 302405
Montgomery, AL 36130

Hugh Davis
Alabama Board of Pardons & Paroles
P.O. Box 302405
Montgomery, AL 36130-2405

                                    /s/ William R. Lunsford
                                    Of Counsel