# Exhibit "A"
# to Memorandum of Law

## Affidavit of Nettie Burks

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RICHARD WAYNE WRIGHT, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:05-CV-439-A |
| | ) | |
| SYLVESTER NETTLES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT OF NETTIE BURKS**

**STATE OF ALABAMA** )
                               )
**COUNTY OF BULLOCK** )

      Before me, the undersigned Notary Public, personally appeared NETTIE BURKS, who after being duly sworn, states as follows:

      1.      My name is Nettie Burks. I am over the age of nineteen (19) years, and I have personal knowledge of the information contained in this affidavit.

      2.      I have been employed at Ventress Correctional Facility ("Ventress") since 1992. From November 3, 2003 to the present, I been employed by Prison Health Services, Inc. ("PHS") as the Health Services Administrator at Ventress. I am currently a licensed nurse in the state of Alabama.

      3.      Richard Wayne Wright ("Wright") is an inmate currently incarcerated at Ventress.

84810.3

4.      A psychotropic drug is one that alters brain function, resulting in temporary changes in perception, mood, consciousness or behavior. These drugs are also used to treat neurological and psychological illnesses.

5.      Mental Health Management ("MHM") is a private health care provider retained by the Alabama Department of Corrections (ADOC) to provide mental health and/or psychiatric care for inmates incarcerated in state prisons in Alabama. MHM is not a subcontractor of PHS and PHS has no authority to direct and/or control any mental health and/or psychiatric care provided by MHM. MHM provides mental health and/or psychiatric care to inmates at Ventress five (5) days a week, eight (8) hours a day. As a general rule, MHM alone is responsible for ordering and prescribing any and all psychotropic medications for inmates with mental health and/or psychiatric conditions. There is one limited exception to this rule. PHS physicians may prescribe and provide inmates with the psychotropic drug Elavil, which is often prescribed for various medical conditions such as neuropathy. No PHS physician or other PHS medical personnel has ever been prescribed Elavil or any other psychotropic drug for Wright.

6.      PHS is not responsible in any way for providing inmates incarcerated at Ventress, including Wright, with any psychiatric care of any kind while MHM is present. PHS is not responsible in any for ordering and/or prescribing any psychotropic medications for inmates at Ventress. PHS' only role in providing psychiatric services at Ventress is its administration of prescribed psychotropic medications through the pill call process. PHS physically administers and/or provides all prescribed medications to all inmates at Ventress through this pill call process. Pill call is the process by which inmates at Ventress receive prescribed medication. Pill call is conducted four (4) times per day at 2:30 a.m., 9:15 a.m., 3:00 p.m. and 9:00 p.m. When inmates are summoned to pill call, each inmate with prescription medication appears before a pill

call window located in the Health Care Unit and a member of the PHS medical staff hands each inmate his prescribed medications. The medications administered and/or provided by PHS during pill call include any psychotropic medications prescribed by MHM for inmates at Ventress that can be taken in pill form. PHS nurses and other medical personnel may not administer any other form of psychotropic drugs, such as injectable psychotropic medications, which are administered directly by MHM personnel when they are present.

7. The PHS medical staff generates a Medication Administration Record or MAR for each inmate who receives medication through the pill call process. MARs document the specific types of medication inmates receive on a day-to-day basis as well as the exact dates when an inmate receives any prescribed medications. MARs are generated for each month in which an inmate receives prescribed medication and provide space for the medical staff to confirm in writing the days within a month when prescribed medication is provided to an inmate. When medicines are administered to inmates during pill call, the administering nurse signs or initials in the space provided for the applicable date of the month on an inmate's MAR, confirming provision of prescribed medication. In short, an inmate's MARs record when prescription medication (including psychotropic medication) is provided, how much medication is provided, the date on which the medication is provided and the time period over which an inmate receives prescribed medication. All prescribed medications (including psychotropic medications) given to an inmate during his incarceration appear and/or are identified in his MARs.

8. A true and correct copy of Wright's Medication Administration Records dated June 2003 through August 2005 are attached hereto as Exhibit "A". As indicated by Wright's MARs, Wright has not received any psychotropic medication of any kind since June of 2003. In

June, 2003, Wright was prescribed and received Haloperidol, a psychotropic medication. Wright has not been prescribed or received Haloperidol since June 29, 2003.

9.  Wright does not have a current prescription for any psychotropic medication and is currently not receiving any psychotropic medication of any kind from PHS. According to Wright's Mental Services Psychiatric Progress Notes dated June 20, 2005, a true and correct copy of which are attached hereto as Exhibit "B", Wright's last evaluation by the mental health staff at Ventress did not result in any psychotropic medications being prescribed for him and a member of the mental health staff noted, "[Wright] is not on any medicines." This is the last entry in Wright's mental health records and there is no indication that Wright has been placed back on psychotropic drugs since that time.

10.  Wright has a history of violent behavior. A Psychological Interview/Data Entry Form dated May 22, 1996, a true and correct copy of which is attached hereto as Exhibit "C", indicates that Wright's mental health must be managed in light of his prior conviction of burglary, resulting in an assault on and injury to the victim. An Emergency Treatment Form dated November 3, 2004, a true and correct copy of which is attached hereto as Exhibit "D", indicates that Wright admitted, "I was fighting. I got a few bumps and bruises." Another document referencing the same incident entitled Referral to Mental Health also dated November 3, 2004, a true and correct copy of which is attached hereto as Exhibit "E", specifies that Wright needed to be referred to mental health because he was not currently on psychotropic medications and, as a result, he was "picking fights" with other inmates. On this same document, an evaluation of Wright's mental status indicates that his demeanor was "Hostile, angry."

Further affiant saith not.

_____
Nettie Burks

SWORN TO and SUBSCRIBED before this the 27th day of October, 2005

_____
Notary Public
My Commission Expires 04/06/06

(SEAL)