IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

Richard Wayne Wright, Sr.,          *
     Plaintiff, Pro-Se.,             *
          -VS-                       *     Civil Action No:
Sylvester Nettles. et. al.,          *     2:05-CV-439-A-WO
     Defendants.                     *

## Plaintiff Wright's Affidavit

STATE OF ALABAMA )
BARBOUR COUNTY )

## AFFIDAVIT

Before Me, a Notary Public in and for said County and state of Alabama at Large, personally appeared Richard Wayne Wright, Sr., who being known to me and being by me first confirmed his statements, depose, and says under oath as follows:

My name is Richard Wayne Wright, Sr., Plaintiff, Pro-Se. I am currently incarcerated in the Ventress Correctional Facility, at P.O. Box 767, Clayton, Alabama 36016. I am over twenty-one (21) years of age and

Page 1 of 19 R.W.W.

have personel knowledge of the Facts Set Forth below.

I was arrested in October 1995 For Assault I, Assault II and Burglary I. In May 1996, I was Sentence to twenty-Five (25) years For the Burglary I to run Concurrent with Ten (10) years For Assault II. Approximately two (2) years into my incarceration (1997) it was brought to my attention by the institutional (~~classified~~ R.W.W.) Classification Specialist at Draper Correctional Facility that I would be Classified as a "Sex OFFender" because there had been written language inserted into a Pre-Sentence Investigation report (here after reFered to as P.S.I report) Falsely alleging I had rape my ex-wife two (2) days beFore I Committed the Said Burglary I, and Assault II in which I was Sentence For. I had no prior Knowledge that a parole oFFicer 'Carolyn Miles-Pruitt' had inserted this inFormation into the P.S.I. report Concerning the Said Burglary I and Assault II at the time oF Sentencing. I talk with the ClassiFication Specialist. Mrs Linda Williams at Draper Correctional Facility (here after reFered to as (D.C.F.)) about my innocence Concerning the (said)

allegation made against me. All my efforts to convince this Classification Specialist came to no avail.

I was transfered to Bullock Correctional Facility (here after refered to as (B.C.F.)) on or about July 1, 1998. After several visits and discussions with Ms. Diana Cephas (Classifications Specialist) at B.C.F. and after writing Ms. Cephas Supervisor Mr. Charles S. Blackledge (Classification/staff supervisor) several requests slips it was determine there was nothing [they] would do and/or could do to remove the Sex Offender label. Due to the Classification staff set standards to classify me as a "Sex Offender" I was left with no choice but to (~~R.W.W.~~ R.W.W.) Filed a $1983 Civil Suit [see Civil Action No. 99-D-1405-N Richard Wayne Wright, Sr.-vs-James Deloach, et. al., defendants]

After Filing the Complaint I began to recieve an enormous amount of retaliation after defendants realize the Court recongnize my Complaint bared a Significant amount of Facts with merits to receive a Judgement in my Favor. Once the Facts was revealed in the 'eyes' of the Court defendants decided to give Plaintiff Wright a due process hearing and remove the "Sex Offender status" Yet

the defendants allowed the language which started this controversy in which these (said) allegations were inserted into plaintiff prison file and yet's remains. This has cause plaintiff chance at a fair consideration for parole to be obselete.

In June of 2001, approximately four (4) months before the evidentiary hearing was scheduled to take place defendants and defendants agents at D.C.F. created a situation to appear as if plaintiff Wright was having psychological problems. Once plaintiff was transfered to Kilby Correctional Facility (here after refered to as (K.C.F.)) (he) was induce with ex-cessive, inapproiate, and involuntary psy-chotropic medication through intimidation, and food consumption. I was placed in a single cell at K.C.F. (P1) unit, given a thin short gown after all my clothes were taken, with the air conditioner turned on full blast all that night. Not once had I stated, I desired to commit sucide, nor had I made any jestures, neither had I engaged in any acts which would make one think I wanted to die. I manage to keep myself `some what' warm and my blood cir-culating by exercising / and walking all

night in this (said) cell to keep warm as I could. I was visited by Dr. Bell, Ms. Crenshaw, two (2) nurses and two (2) or three (3) Correctional Officers. Dr. Bell inform me I was staying in that cell unless I complied to take the medication they and the Mental Health Management team (here after refered to as M.H.M. team) had recommended. I was also warned by doctor Bell "if I did not willingly comply these (those) officers would help him hold me while they gave me the shot. I went to sleep after I complied, in order to get out of that cold cell, instead I was given a blanket. They kept me at K.C.F. a period of six (6) to eight (8) weeks before I was transfered to B.C.F. During this time at K.C.F. I recall being moved from the (P1) unit to the mental health unit, then to south ward unit. Finally, I was transfered to B.C.F. where I receive additional harrassment by the M.H.M team to get me to (comply R.w.w) continue to comply with their recommended medication (psychotropic).

My Family was not permitted to visit me (R.w.w) until I arrived at B.C.F. from K.C.F. I express to my Family members "Why?" I was moving slow

(physical mobile skills) and what I had
been through and the only reason I
took the shots because I was leaded
to believe I would see them sooner.
After that visit I refused all psychotropic
medication (in which these defendants
refuse to submit to plaintiff with these
papers they have submitted) suggested
by them and I signed numerous refusal
forms, yet their harrassment continued.
These defendants and their agents
went to great lenghts to disrupt my
thought pattern and distort my ability
to think with the use of their psycho-
tropic medication. At the evidentiary
hearing I recall tring to explain to
the magistrate Judge why the case
Should not be moot. Obviosly I did
not give a well enough explaination
because the case was dismissed (see
Civil action No. 99-D-1405-N, Richard
Wayne Wright, Sr. -Vs- James Deloach, et.al.
        The abuse continued and an addtional
label of mental health illness were
attach to plaintiff in means of re-
taliations and to forbid him a transfer
from B.C.F. Plaintiff had work hard to
maintain a fairly good institutional file
and took many programs which were
available to him. Mrs. S. Seals (Classification

Page 6 of 19

Specilist) had made a statement during one of plaintiff progress reviews that plaintiff has a serious demetor/demerit which I thought [she] was refering to demeanor from the way [she] said it - addressing how [she] viewed plaintiff behavior as described in plaintiff amended complaint page seven (7) paragraph one (1). Plaintiff later found out there's a disease called dementia and this what I believe defendant S. Seals was refering to due to plaintiff illnesses he now suffers. Defendant S. Seals would like this Honorable Court to believe she did not recommend plaintiff custody and security level (SL) be raised to level Five (V). (See Exhibits Six (6), Seven (7) and Eight (8) which was attach to[the] initial Complaint plaintiff submitted.

Lt. Holland did indeed threaten plaintiff in the kitchen office with violence and called the nurse to have his profile change, to her specification yet she denied these facts. Plaintiff is not able to send all the exhibits which shows the shaving profile was change twice at Ventress Correctional Facility this was done due to Lt. Holland request at [the] time she took plaintiff in the R.W.W Kitchen office, Called the health care Unit made [her] recommendation to

Page 7 of 19

alter plaintiff shaving profile ending this encounter with defendant Holland threatening words. Plaintiff Wright informed the higher officials at Ventress Correctional Facility Captain L. Monk, Warden D. Parker and Warden J.C. Giles through the inmate request slip box and hand written Formal Complaint ~~Form~~ Form, but plaintiff did not recieve any response from [them].

Due to plaintiff Wright motion for production of documents (Court Doc. No. 102) being denied in part by this Honorable Court it has taken away some of plaintiff Wright ability to substantiate the Fulliness of plaintiff Claims. Plaintiff Wright is having a difficult time tring to assess which documents [I] should send because [his] indigent status forbids [him] to have the postage to send all these needed documents and defendants and /or prison officials only supplies plaintiff with two (2) stamps per week on Wednesday at Ventress Correctional Facility, effecting a essential part [his] access to Court Now the most current problems have arosed where in plaintiff has receive re-turn mail from the Court Clerk stating exhibits were not filed because defendant(s)

Only sent the letter plaintiff wrote the Clerk with the exhibits in conformation to the motion "In response to Dr. Sanders and M.H.M, Inc. and defendants reports and special reports" has been return to him because plaintiff could not put all the papers in one (1) envelope. Plaintiff is even in a worse position because these exhibits are essential to his clams and they has thus far used a process of elimination and now that has been defeated. If plaintiff had the knowledge of an attorney he would know how to get the roster for segregation at Bullock Correctional Facility at the time they was shown (by them using other inmates) as an example of their common practise of intimidating inmates in front of other inmates with their use of violence to instill fear. This was what defendant S. Nettles and defendant C. Specks did and frighten plaintiff to believe they would do the same to him as they did to inmate Dillard and inmate Whitfeild. If plaintiff was afforded an attorney to aid him in getting statements from witness and some of the documents it would bring more proof to plaintiff claims. The attorney (if plaintiff were afforded one (1) or had the income to hirer one) could use

Page 9 of 19

his knowledge to force defendants to provide supportive documents because of plaintiff lack of income and exercise of liberty that is restricted to only certain documents as defendants has submitted to him. Many of the documents plaintiff ask for in this motion "Motion For Production Of Documents" could be used to substantiate plaintiff claims because plaintiff cant expect defendants to acknowledge their wrong. Records plaintiff was/has 'seeking' for the segregation records from November 3, 2004 until March 3, 2005 will show this Honorable Court these 'people' as plaintiff indicated in his complaint and amend complaint was housed with plaintiff. And of those which had tested positive and was permitted to be housed with plaintiff and mingled with plaintiff on the seg. exercise yard/cage.

One example of defendant M. Bruton acts of deliberate indifference can be acknowledge by defendant Bruton and Sgt. Seals willingness to put plaintiff Wright back in population around inmate Jones after plaintiff informed them of the threats inmate Jones had made prior to to our separation in the segregation unit at Bullock Correctional Facility. This was done deliberately, so that, plaintiff could

receive another attack as that ercuted upon him in the same manner with inmate W. Solomon. Fortunately plaintiff Furtune turn out to be good because inmate Jones were pick up by Federal investigators before and incident of physical harm could come to Thim. (See defendant M. Bruton Affidavit and incident report). Defendant Nettles Fail to take heed to plaintiff Wright's plead and allowed plaintiff to be ship within mate Jones with out any noted documentation. These was extended from defendant(s) and defendant's agents willingness to place inmate Wright in the cells with other aggressive in-mates 'whom' had exhibited aggressive be-havior, where in, plaintiff had to be move out the cell with them on two (2) occation.

There were many inmates that witness defendant's acts of cruelty upon plain-tiff Wright and heard plaintiff converse with the said officer(s) and nurse's concerning medication which plaintiff mention in his Complaint concerning needed treatment. Plaintiff stop eating for a while after he had eaten and became sick and could not get medical treatment that night be-Cause defendant B. Hampton and d. Ellis would not called the shift commander or a medical care personel. Plaintiff told officer McCall that next morning and said

they got a note that I been acting crazy and need to see mental health personel. This started with defendant J. Ellis (which plaintiff believes) because she called me crazy while using other derogatory and profane language because I called out there name many times repeatedly approximately two (2) in a half(½)(2½) to three (3) hours prior to there and officer Hampton shift duty.

Defendant H. Ruffin states I ask him about the report about force medication. He failed to mention they serve me the noticed before the hearing was held, where in, defendant Ruffin read the notice and told me to prepare for the hearing. He failed also to mention the request slips. I gave him to give and/or leave for the Warden Holt or this designee Warden Boyd. Often times officer Ruffin were the officer I place the Sick Call slips hand's in because he often work with officer Foster in the segregation unit the `time' plaintiff Wright was housed in the Seg. Unit.

Officer M. Foster accompanied officer H. Ruffin at the times listed in plaintiff Complaint. If what defendant M. Foster Stated in his affidavit are true, that all Sick Call request slips that he receive

Page 12 of 19

From Imed was placed in the hall way Sick Call request box then the only other logical explaination For plaintiff not being called to sick call screening were that the nurse station discard the Sick Call slips from plaintiff. Plaintiff has difficulty believing this theory, more than less, plaintiff Wright believe between officer Ruffin and officer Foster they willing and knowingly discarded plaintiff sick call slips so that plaintiff could suffer in Seg. Due to the screening process of these / those nurse's under P.H.S.,Inc., being and was not performed many times and plaintiff was forbidden a copy of the sick call slips the few times plaintiff Wright was screen in the Segregation unit, he had and/or has no record to show this Honorable Court besides that and/or those he now posses from plaintiff prison filed and very few he kept and/or of those that wrote the same language on. Both officer Foster and officer Ruffin would have this Honorable Court to believe [they] know _not_ of plaintiff lunch being taken as well, when in fact they were forbiding plaintiff of this tray which plaintiff knows not of any institutional policy that permitted such practises as discribed.

The Defendant Linda Rudolph Some how has Forgotten her presents with Mr. C. Blackledge as their escort along with Officer H. Ruffin and Office M. Foster. This meeting was one in which plaintiff was taken to an empty cell in segregation at Bullock Correctional Facility concerning plaintiff quest For protective custody and told by defendant Blackledge when I verbally express my concerns For myself as much as he portrayed to discard plaintiff existance as a human being plaintiff Finds it hard to believe defendant's L. Rudolph, defendant H. Ruffin and defendant M. Foster has no recollection of this meeting.

Defendant L. Ligon made a phone call to 'who' was suspected as being officer T. Holmes by which the disciplinary was held. He claims he was not a participant in the hearing that's Far From the truth. He Fails to mention the in-cident in the Segregation unit when he was called due to inmate J. Martinaz aggressive actions. Defendant in deed had tried move out oF the cell (Cell three (3)) with inmate J. Martinaz into Four

(4) Cell.

When plaintiff Wright had a white inmate put in the cell with him [I] became alarmed because I had been attack by a white inmate afliated with the Southern brotherhood **and** [I] was arguing with other white inmates before I was attack by Walton Solomon. Defendant J. Bailey present with defendant A. Jackson (Shift) the responsibility to third shift about my Fears, which brought defendant M. Austin and defendant L. Ligon into [this] Situation. Defendant M. Austin did radio defendant L. Ligon to the Segregation unit and d. Sgt. L. Ligon did refuse to move plaintiff out the Cell and right in front of defendant M Austin, Sgt. L. Ligon told me to suit [him] then, after I express he would be liable if I was assault again. Defendant M. Austin states [he] never witnessed nor heard anyone mention and/or tell me anything and claims he does not know what I am talking about.

DeFendant B. Davis was present when plaintiff Wright and inmate W. Solomon was escorted to the shift office and [he] later appeared with inmate W. Solomon and defendant Babers

in the infirmary during the body Chart yet hed too claims he has no Knowledge of this incident Concerning plaintiff. It is Clearly Known by plaintiff that defendant B. Davis has Knowledge of the said incident, Defendant S. Nettles are/is one of the main defendants 'whom' like to state plaintiff has a mental problem When plaintiff reveals Significant Facts to elevate their story. Yet when Plaintiff Wright impose upon with thed disciplinary infraction of assualt on another inmate and indecent exposure/ Exhibitionism plaintiff is sane in their eye's, but when (to use) the mental health theory to Favor their cause then it's said plaintiff is insane/mentally disturb. Defendant E. Laseter attest she has no Knowledge of the incident but it is known she was the Cubical officer. Defendant E. Laseter is a perfect example of how "Some of them" can be directly Knowledge about these incidents yet state theyd are not.

Done this the <u>11th</u> day of April, 2006.

Respectfully Submitted,

Richard W. Wright Sr.

Richard Wayne Wright Sr. # 187140
Petitioner, Pro-se.

Page 16 of 19

## Certificate of Service

This is to certify that I Richard Wayne Wright, Sr., Pro-Se, am the petitioner in the above encaptioned motion / Affidavit and certify I have sent a copy of this affidavit to the Clerk of this court and earnestly ask due to plaintiff indigent status that this Honorable Court and/or Clerk forward a copy of this said motion / Affidavit to defendant's Counsel (s) which addresses are as following:

Gregory F. Yaynmai
ASB 2411 - H676
Scott Sullivan, Streetman & Fox, P.C.
2450 Valley Dale Road
Birmingham, Alabama 35244

Troy King (Attorney General)
State Bar # ASB - 5949 - 5615
Steven Mallette Sirmon
(Assistant Attorney General)
Hugh Davis (Attorney)
Alabama Board Pardon and Paroles
Post Office Box 302405
Montgomery, Alabama 36130

David B. Block (ASB - 5098 - K62D)

William R. Lunsford (ASB-4265-L72L)
Douglas B. Hargett (ASB-9928-S81H)
Balch & Bingham LLP
Post Office Box 18668
Huntsville, Alabama 35804-8668

Kim T. Thomas
Gregory Marion Biggs
Alabama Department Of Correctional R.W.W
        Legal Division
301 Ripley Street
Montgomery, Alabama 36130

by placing this Motion/Affidavit in
the hands of the on duty infirmary
officer to placed this in the legal
mail box For postage to be paid by
the prison officials here to place
in the United States mail box at
Ventress Correctional Facility after
postage is supplied and properly address
this on the 11th day of April 2006.

            Respectfully Submitted,

            Richard Wayne Wright, Sr. #187140
            Ventress Correctional Facility
            Infirmary Room # 103

            Page 18 of 19

Post Office Box 767
Clayton, Alabama 36016

STATE OF ALABAMA)
COUNTY OF BARBOUR)

## NOTARY STATEMENT

Subscribed And Confirms To Before ME This _11th_ Day of _April_ , 2006.

_Rodd W Wighl Sr._                    _Carolyn R. Abercrombie_
AFFIANT                                NOTARY PUBLIC

My Commission Expires August 18, 2007
MY COMMISSION EXPIRE DATE

Page 19 OF 19