IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RICHARD WAYNE WRIGHT, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.  2:05cv439-WHA |
| ) | |
| SYLVESTER NETTLES, *et al*, ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, the plaintiff Richard Wayne Wright, Sr. ("Wright"), a prison inmate, complains in a convoluted and conclusory fashion that the defendants have deprived him of his constitutional rights. Wright initially sued over 50 correctional officers, prison medical personnel and members of the Board of Pardons and Parole.[1] He seeks compensatory and punitive damages and injunctive and declaratory relief.

Pursuant to the orders of this court, the defendants filed special reports and supporting evidentiary materials addressing Wright's claims for relief. In accordance with the orders entered in this case, the court deems it appropriate to treat these reports as motions for summary judgment. Thus, this case is now pending on the defendants' motions for summary judgment. Wright was provided an opportunity to respond to the motions and has done so. Upon consideration of the motions, pleadings, responses and evidentiary material filed in

---

[1] Numerous claims and defendants have previously been dismissed or recommended for dismissal by the court. *See Order of the Court August 31, 2005*, Doc. # 23 and *Recommendation of the Magistrate Judge, November 30, 2005*, Doc. # 82.

support of and in opposition to the motions, the court concludes the defendants' motions for summary judgment are due to be granted.

## II.  STANDARD OF REVIEW

To survive the defendants' properly supported motions for summary judgment, Wright is required to produce some evidence which would be admissible at trial supporting his claims of constitutional violations.  *See* FED. R. CIV. P. 56(e).  Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984).  Thus, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents

insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving part, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Consequently, where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to any material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Wright has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary

judgment. *Matsushita*, *supra*.

### III. DISCUSSION

Wright's pleadings are rambling and thus, the exact nature of his complaints are difficult to characterize or quantify in legal terms. Therefore, the court finds the best approach is to consolidate and catagorize the defendants and collectively address the claims against each class of defendants.[2]

**A. Claims against Correctional Officers.** The plaintiff presents numerous due process claims against the correctional defendants. Specifically, he alleges that they denied him due process in disciplinary proceedings; they placed information in his file "which would cause 'any viewer' of plaintiff's prison file to believe plaintiff is mentally ill;" and they ignored medical personnel's recommendations that he be released from a "mental health hold."[3]

---

[2] The defendants raise affirmative defenses including qualified immunity and statute of limitations. However, because the court concludes that the plaintiff is not entitled to relief on the merits of his claims, the court pretermits discussion of these and other defenses.

[3] Wright also makes conclusory allegations that he was placed in proximity to an enemy and inmates infected with TB, and harassed and threatened with violence due to his shaving profile. With respect to these types of claims, the plaintiff has failed to allege that he suffered a physical injury. In enacting the Prison Reform Litigation Act of 1995, Pub.L. 104-134, 110 Stat. 1321 (1996) ("PLRA"), Congress intended to "stem the flood of prisoner lawsuits in federal court." *Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000) (*en banc*). Pursuant to 42 U.S.C. § 1997e(c)(1), the court shall dismiss claims challenging prison conditions, if the court determines that an action is frivolous or fails to state a claim upon which relief may be granted. *Id; see also, Higginbottom v. Carter*, 223 F.3d 1259 (11th Cir. 2000). One provision of 42 U.S.C. § 1997e(e) provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody **without a prior showing of physical injury**." (emphasis added). The plaintiff alleges no physical injury related to his conditions of confinement claims. He points to no evidence to indicate that he suffered a physical injury. Thus, the court concludes that, to the extent that the plaintiff's claims can be construed as conditions of confinement claims, these claims are subject to dismissal in accordance with the provisions of 42 U.S.C. § 1997e(e). *See Harris, supra*.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state "shall deprive any person of life, liberty, or property without due process of law." Thus, the Constitution is implicated only if a person is deprived of an interest which is in some way protected by the Due Process Clause. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court abandoned its former methodology for determining the existence of a liberty interest. Under that prior formulation a federal court ascertained whether a state created a constitutionally protected liberty interest by parsing language of statutes and regulations to determine if the language was "of an unmistakably mandatory character" placing "substantive limitations on official discretion." *Sandin*, 515 U.S. at 480. In *Sandin*, the Court held that federal courts must instead look to the nature of the restraint imposed, rather than statutory or regulatory language, to determine if a liberty interest exists.

> Following *Wolff*,[4] we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause... But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

515 U.S. at 483-484 (1995) (footnote added) (citations omitted). The Court specifically rejected the contention that any action taken by correctional officials as a punitive measure necessarily encroaches upon a liberty interest protected under the Due Process Clause.

---

[4] *Wolff v. McDonnell*, 418 U.S. 539 (1974).

*Sandin*, 515 U.S. at 484. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.*, at 477.

Wright complains that the defendants denied him due process during numerous disciplinary proceedings. For example, Wright maintains that he was denied due process because correctional officials didn't call witnesses and failed to notify him or conduct the disciplinary hearings within the time required by administrative regulations.[5] He also asserts that he was improperly removed from the trash detail which allowed him to go outside.

As a result of the disciplinaries for various rule violations, Wright was placed in administrative segregation.[6] On at least one occasion, his punishment consisted of thirty (30) days loss of store, visiting and phone use privileges and twenty-one (21) days in segregation. (Defs' Special Rept., Doc. # 70, Ex. E at 4). This type of discipline is not "atypical" in a prison setting. Wright has no constitutionally protected interest in the procedures attendant to his disciplinary hearings because the resulting restraint or deprivation, without more, did not impose on him an "atypical and significant hardship in the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484. Under *Sandin*, there has been

---

[5] To the extent that the plaintiff's complaint can be construed to allege that his constitutional rights have been violated because the defendant did not follow the prison's own rules and regulations, the defendant is entitled to judgment on this claim. *See Hughes v. Rowe*, 449 U.S. 5 (1980) (In reviewing the complaint, a pro se plaintiff is entitled to a liberal construction of his claims.) The failure to follow regulations, by itself, does not rise to the level of a constitutional violation. *See Sandin v. Conner*, 515 U.S. 472 (1995).

[6] It is unclear from Wright's pleadings the exact nature his punishment as a result of these disciplinaries.

no deprivation of a constitutional right by virtue of any discipline imposed on him. Consequently, the defendants are entitled to judgment as a matter of law on Wright's due process claims.

Wright misguidedly complains that he has a liberty interest in continued participation in the trash detail because it allows him to be outside. It is well establish that inmates have no protectible right in keeping a certain job. *Adams v. James*, 784 F.2d 1077 (11th Cir. 1987). The defendants are entitled to summary judgment on this claim.

The court next considers the plaintiff's false information claim. Liberally construing his pleadings, Wright complains that the correctional defendants placed false and erroneous information in his prison file that would suggest he is mentally ill. In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the court considered a pro se inmate's complaint alleging that he was deprived of due process because erroneous information in his prison file was used to deny him fair consideration for parole and minimum custody status. Monroe alleged that presentence report information indicating he had raped the victim of his crime was false. The defendants admitted the presentence information was false. Acknowledging that he had no liberty interest in parole, Monroe claimed a due process right to be fairly considered for parole. He contended that the defendants' reliance on admittedly false information in order to deny him parole or minimum security classification violated due process. *Monroe* establishes that reliance on *admittedly* false information to deny consideration for favorable treatment may rise to the level of arbitrary and capricious treatment violative of the constitution. However, the *Monroe* court was careful to distinguish its holding from its prior

decision in *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir. 1982).

> Our holding today does not conflict with our earlier holding in *Slocum*, *supra*. In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole. *Slocum*, 678 F.2d at 941. The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors. Unlike the instant case, in *Slocum* the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information. We held in Slocum that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration. Id. at 942. We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files. Id. In the case at bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender. As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations. *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.2d at 1442.

*Slocum* controls the disposition of the instant case. The defendants do not admit that any information in the plaintiff's prison file regarding his prior mental health treatment is false. The undisputed facts demonstrate that, at some point in the past, Wright received mental health treatment while incarcerated. His contention that false information may be in his file and may suggest that he is still mentally ill does nothing more than raise the possibility that there may be information that may be false. The mere possibility that false information may be used by the defendants is insufficient under *Monroe* to demonstrate

arbitrary or capricious treatment.[7] Since it is undisputed that the defendants did not *rely* on *admittedly* false information, the plaintiff is entitled to no relief as a matter of law and summary judgment is due to be granted in favor of the defendants.

Accordingly, the court concludes that the plaintiff has failed to create any genuine issue about whether actions of the correctional defendants violated his constitutional rights. Summary judgment is due to be granted in favor of the correctional defendants on these claims.

**B. Medical Defendants**. The plaintiff alleges that the medical defendants violated his rights secured by the Eighth Amendment because they were deliberately indifferent to his serious medical needs. For example, Wright complains that the medical defendants' actions have caused him to suffer from dementia. He further complains that the medical defendants failed to provide him with medication to combat exposure to tuberculosis ("TB"), refused to check his blood sugar levels and refused to give him written explanations of their diagnoses and treatment plans. Finally, he alleges that the medical defendants have, in the past, tried to force him to take psychotropic medications and may, in the future, again try to

---

[7] The dispute about whether the information is false does not preclude summary judgment. In *Hewitt v. Helms*, 459 U.S. 460 (1983), the Court stated that "prison officials have broad administrative and discretionary authority over the institutions they manage and . . . lawfully incarcerated persons retain only a narrow range of protected liberty interest . . . broad discretionary authority is necessary because the administration of a prison is "at best an extraordinarily difficult undertaking," . . . and . . . to hold . . . that *any* substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." 459 U.S. at 467. Requiring a trial or hearing every time a prisoner asserted that false information was the basis of prison official's decisions would involve the court in review of a multitude of decisions which traditionally are within the province of prison authorities.

force him to take those medications.

To prevail on his Eighth Amendment claim against the medical defendants, Wright must show at a minimum that these defendants acted with deliberate indifference. *Estelle*, *supra*; *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999). Deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those medical needs are "serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.

> The "seriousness" of an inmate's medical needs also may be decided by reference to the effect of delay in treatment. . . . An inmate who complains that the delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that "the tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir. 1994) . . . Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

*Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1189-89 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

No extended discussion of these issues is necessary. Although he complains, in a conclusory manner, that the medical defendants have been deliberately indifferent to his medical needs, Wright has failed to come forward with any evidence showing that the defendants knew that the manner in which they were treating him created a substantial risk

of harm to him and they disregarded that risk. The plaintiff's medical records demonstrate that he has received medical treatment on numerous occasions and that he has received medication.

Wright has been tested multiple times for TB and has always tested negative. His blood sugar has been checked and there is no indication that Wright suffers from hypoglycemia or diabetes. Wright has not received any psychotropic medication since June 2003. Wright's medical records do not demonstrate that he has developed dementia or TB, nor do they reveal a serious medical condition for which he has not received treatment. *See Brown*, *supra* (a pro se litigant's allegation of contaminated drinking water was found unsubstantiated and completely speculative because the litigant failed to submit a doctor's diagnosis for any medical examination evidence supporting those allegations.) A plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment. *Harris v. Ostrout,* 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). In the final analysis, the plaintiff has failed to show that he was at any risk of serious harm or that any of the defendants knew that he faced a substantial risk of serious harm. In the absence of such a showing by the plaintiff, it is clear that the plaintiff has failed to establish a genuine issue about deliberate indifference on the part of the defendants. *Brown,* 906 F.2d at 670. Summary judgment is therefore due to be granted in their favor on this claim. *Celotex,* 477 U.S. at 322-23.

To the extent that Wright disagrees with the treatment that he has received, his mere desire for a different treatment modality does not establish deliberate indifference. A prison

or medical official does not act with indifference by providing medical care that is different from that which a prison inmate desires. *See Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985). Finally, Wright has no constitutional right to receive written reports, statements, diagnoses, or treatment plans. Summary judgment is due to be granted in favor of the medical defendants on these claims.

**C.  Pardons and Parole Board Defendants.**  Wright names William Segrest ("Segrest"), Executive Director of the Alabama Board of Pardons and Paroles ("the Board"), and the members of the Board as defendants in this case. Liberally construing his complaint, Wright contends that these defendants violated his constitutional rights by setting off his parole hearing date five years.[8] Under applicable federal law, Wright is entitled to no relief from this court.

Wright appears to complain that the retroactive application of the Board's rules, which changed the frequency of parole consideration dates from every three years to every five years, is a violation of his constitutional rights. The Ex Post Facto Clause bars "enactments which, by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones*, 529 U.S. 244, 249 (2000). Thus, Wright must show that, as applied to his own sentence, the amended law created a significant risk of increasing his punishment. *Garner,* 529 U.S. at 255.

---

[8] Wright's complaint can also be construed as alleging that the defendants denied him an opportunity to refute information in his pre-sentence report and prison file and erroneously relied on a mental health designation to deny him parole. For the reasons as set forth in Section A of the Discussion in the body of this opinion, and in accordance with *Slocum, supra*, the plaintiff is entitled to no relief on these claims and no further discussion is necessary.

A determination of whether a parole regulation violates the Ex Post Facto Clause when applied to inmates who were entitled to more frequent parole consideration at the time they committed their crimes must be made on a case-by-case basis. *Harris v. Hammonds*, 217 F.3d 1346, 1350 (11th Cir. 2000). The court is required to consider evidence of the general operation of the parole system and any other evidence produced by a prisoner in support of his assertion that the regulation "created a significant risk of increasing his punishment." *Harris*, 217 F.3d at 1350.

In *Garner v. Jones*, *supra*, the Supreme Court addressed whether an amended rule increasing parole consideration hearings from every three years to every eight years in Georgia violated the Ex Post Facto Clause. The Court determined that extending the time for a scheduled parole consideration hearing did not prevent the exercise of discretion by the Georgia Board of Pardons and Paroles during the period between parole reviews, because the agency's policies permit the Board, in its discretion, to schedule expedited reviews in the event of a change in circumstance or new information. *Garner,* 529 U.S. at 256.

A determination of whether retroactive application of a particular change in parole law respects the prohibition of ex post facto legislation is often a question of particular difficulty when the discretion vested in the parole board is taken into account. *Garner,* 529 U.S. at 249. In deciding whether a parole regulation prevents the Board's exercise of discretion, the court may consider the implementing regulations, the statutory structure, and the Board's representations regarding its operations. *Id.* at 254. "The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience." *Id.* at 253.

Alabama law gives the Board broad discretion in determining whether an inmate should be granted parole, *see* ALA. CODE § 15-22-26 (1975), and when parole will be granted. ALA. CODE § 15-22-24(a) (1975) . The state law also requires that the Board consider the public interest in every case. ALA. CODE § 15-22-26 (1975). This discretion, however, does not displace the protections of the Ex Post Facto Clause. *Garner*, 529 U.S. at 253.

The authorization for changing the frequency of parole consideration dates is found in two regulations. Article 6, § 11, *Rules, Regulations and Procedures of the Board of Pardons and Paroles* (2001), vests the Board with discretion to determine how often to set an inmate's date for reconsideration, with five years being the maximum. Article 2, § 8, provides that, if the Board "scheduled the next consideration more than three years after denial, the Committee may consider earlier scheduling, but such review shall not begin earlier than twenty-four months after the Board has denied parole."

An opportunity for an expedited parole review is available to qualified inmates. Article 2, § 1, provides that "[s]uch a rescheduling may be granted only for good cause shown such as a prognosis of imminent death or a recommendation from the prosecuting attorney or the sentencing judge, and circumstances bearing on his probability to succeed on parole, not merely because the prisoner is following the prison rules." Thus, the Board's rule changes are designed for the better exercise of its discretion. *See Garner,* 529 U.S. at 254-55.

The record before the court does not establish that the rules changing the frequency

of parole hearings from three years to five years increases the level of risk of Wright serving a longer term of imprisonment. Indeed, the rules did not mandate that the frequency increase at all; rather, the rules gave expanded discretionary authority to the Board concerning the frequency of parole reviews. However, even if such a risk were to develop, Wright may, upon a showing of "circumstances bearing on his ability to succeed on parole," seek an earlier review before the review interval for him runs its course.

In short, the rules do not by their own terms show a significant risk inherent in their framework of increasing the measure of punishment for Wright. Likewise, Wright has failed to demonstrate "by evidence drawn from the rule's practical implementation by the . . . [Board] that its retroactive application will result in a longer period incarceration than under the earlier . . . rule." *Garner*, 529 U.S. at 255.

To the extent Wright maintains that scheduling a parole reconsideration hearing five years after a prior review is a denial of due process, his claim does not rise to the level of a constitutional violation. Prisoners in Alabama possess no liberty interest in being granted parole. *See Monroe v. Thigpen*, 932 F.2d 1437, 1441 (11th Cir. 1991). The Constitution does not guarantee parole nor does the Alabama parole statute create for Alabama prisoners a protected liberty interest in the expectation of parole. *Ellard v. Ala. Bd. of Pardons & Paroles*, 824 F.2d 937, 941-42 (11th Cir. 1987). Consequently, Wright's assertion that he is entitled to a parole review before the scheduled review date does not establish a violation of due process. Consequently, summary judgment is due to be granted in favor of these defendants on these claims.

**D. Claims against all the Defendants**. Finally, Wright alleges, in very general terms, that all the defendants conspired against him, in violation of federal law, to deprive him of his constitutional rights and denied him equal protection under the law.

**1. Conspiracy Claim.** A conspiracy claim justifiably may be dismissed because of the conclusory, vague, and general nature of the allegations of a conspiracy. *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). The court has carefully reviewed the plaintiff's unsworn pleadings. His description of the defendants' actions does not establish the existence of a conspiracy. The plaintiff presents no material facts sufficient to establish a conspiracy existed between any of the defendants. More importantly, the plaintiff presents no evidence that the parties reached an agreement to violate his constitutional rights. *See Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir. 1988) ("To establish a prima facie case of conspiracy to violate rights protected by § 1983, a plaintiff must demonstrate that the defendants "'reached an understanding' to violate his rights."); *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) (merely "stringing together" acts, without showing contacts between private person and state actors which could prove that these parties "reached an understanding" to violate plaintiff's rights, is insufficient to demonstrate the existence of a conspiracy). Thus, the court concludes that the plaintiff's bare allegations of a conspiracy are insufficient to support a claim for relief under 42 U.S.C. § 1983. *Harvey*, 949 F.2d at 1133; *Fullman*, 739 F.2d at 556-557. "It is not enough to simply aver in the complaint that a conspiracy existed." *Fullman*, 739 F.2d at 557. Thus, the court concludes that the defendants' motions for summary judgment on the plaintiff's conspiracy

claims are due to be granted.

      **2. Equal Protection Claim**. The plaintiff also claims that the defendants deprived him of equal protection of the law by depriving him of medical treatment. To establish a claim under the equal protection clause a plaintiff must show (1) that he is similarly situated with other persons who were treated differently than him, and (2) that the reason for the different treatment was based on race, religion, national origin, poverty or some other constitutionally protected interest. *Damiano v. Florida Parole And Probation Comm'n*, 785 F.2d 929 (11th Cir. 1986). Discriminatory intent must be shown; arbitrary application without discriminatory intent is insufficient. *E & T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987).

> Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.

*Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted). *See also Hernandez v. New York*, 500 U.S. 352, 359 (1991). In a case such as this, where the plaintiff challenges the actions of prison officials, exceptionally clear proof of discrimination is required. *Fuller v. Georgia State Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).

      Although the plaintiff vaguely asserts denial of equal protection in his complaint, he specifies his claim of discrimination in his response to the defendants' special reports. He

asserts that the defendants are biased against him and harass him because he is black and they treat white inmates better. He does not present any evidence in support of his claim. The plaintiff makes absolutely no showing of a denial of equal protection. He fails to show that there are prisoners of other races who are treated differently than him or any other African-American prisoner. After careful review of the pleadings and supporting evidentiary materials filed in this matter, the court concludes that the plaintiff has failed to come forward with any evidence showing that differential treatment, if any, was intentionally discriminatory under the legal standard set forth above. The defendants are, therefore, entitled to summary judgment on his equal protection claim. *See Celotex*, 477 U.S. at 322-323.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendants' motion for summary judgment be granted, that judgment be entered in favor of the defendants and against the plaintiff, that this case be dismissed with prejudice, and that the costs of this proceeding be taxed against the plaintiff. It is further

ORDERED that on or before **September 11, 2007**, the parties may file objections to the Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the

Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 29th day of August, 2007.

                                             /s/Charles S. Coody
                                    CHARLES S. COODY
                                    CHIEF UNITED STATES MAGISTRATE JUDGE