IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

RICHARD WAYNE WRIGHT,SR.,
    Plaintiff, Pro-Se.
      -VS-
SYLVESTER NETTLES,ET.AL.,
    DEFENDANTS.

Civil Action No.
2:05-CV-439-WO

<u>Plaintiff Wright Motion Of Objection To The Recommendation Of The</u>

<u>Magistrate Judge Passed Down On August 29, 2007</u>

COMES NOW, Plaintiff Richard Wayne Wright Sr. Bey, Pro-Se., before this Honorable Court on a motion of objection to the recommendation passed down on August the 29th day of 2007, by the Honorable Charles S. Coody (chief United States Magistrate Judge (Court Doc. No. 213)).

Pursuant to the recommendation's and order of dismissal of plaintiff claims,plaintiff seeks to establish genuine issues of specific facts for trial.

Some of the evidence which is require for plaintiff Wright to produce are and in part exist in the prison official custody (plaintiff prison files, prison log sheets/records, etc.). Many of these documents plaintiff petitions this Honorable Court to compel the defendants to submit for the record would take plaintiff Wright beyond the pleadings, showing claims and establishing genuine issues for trial.

To properly suffice this Honorable Court on any part of the prima facie case the plaintiff need's this Honorable Court to compel defendants and/or defendant's agents by or through Court order the production of documents (bearing the proof for trial) to preclude Summary Judgement against him. Other requested documents and information would too establish other genuine issues of material facts so that any reasonable trier of facts could return a

reasonal             PAGE <u>1</u> OF <u>50</u>

reasonable verdict in plaintiff favor.

## ISSUES TO BE PRESENTED FOR REVIEW

1. This Honorable Court has implimented its discretion in such a way to consolidate and catagorize the defendants (by class) takes away this Court possible view of addressing defendants acts individually while dissolving the component parts of plaintiff claims. This approach this Honorable Court finds best has deduced and collasped plaintiff (§ 1983) complaint, concluding the defendants motions, pleadings responses and evidentiary material [as] motion for Summary Judgement.

2. Plaintiff motions, pleadings, written responses and evidentiary material filed in support of and in opposition to defendants motion for summary judgement are to be taken as true and viewed in light most favorable to plaintiff.

3. Although factual inferences must be viewed in a light most favorable to the plaintiff. This Court goes on to say plaintiff does not escape the burden of establishing genuine issues of material facts. For such cause plaintiff ask that this Honorable Court reconsider plaintiff "Motion For Production Of Documents" dated by plaintiff December 28, 2005, and compel defendants to produce the requested documents. Plaintiff named the specific documents to further substantiate the facts in plaintiff complaint. Plaintiff ensures this Honorable Court he is not on some (fishing expedition) to discover "any" false information 'not known' too him allready existing, but solely request documents which has true relevancy to this case and bares on the face of such document(s) the false and misleading information plaintiff would like expunge from his files has thus far cause the reverse effects he now suffers. Should this Honorable Court up hold its prior recommendation(s) 'not' to afford plaintiff an attorney and/or impliment the needed order (to compel the

Needed documents From the defendants), thus if this Honorable Court Consider plaintiff abled and Capable of presenting without the needed documents) the necessary elements, Can not be manifested. This honorable Court leaves plaintiff With the unbearable burden to produce Supportive documents absent of an order placed on defendants

## Issue I

A). Liberty Interest

1). The Sentence imposed upon plaintiff must be taken into account because the P.S.I report Contributed to the gravity of the Crimes(Burglary I and Assault II) in Which plaintiff Was Convicted For and Sentence to and did heighten the Sentences imposed upon plaintiff at the Sentencing hearing.

2). The punishment 'too' Was heighten Within the Alabama Department of Corrections 'because of' the information imputed/alleging plaintiff had raped his wife/ ex Wife two (2) days prior to

Page 3 of 50

the Commission of the Crime he was Convicted For. At the time of the Sentencing hearing plaintiff did not have any knowledge Such information existed within a report (P.S.I.) nor was the P.S.I. report ever mention. As a result of the report (P.S.I.) Coupled with the false information, imput in it, has Caused the Typical and Significant hardship upon plaintiff.

3). Plaintiff shall further attempt to show this Honorable Court the intent of the defendants and their agents. Plaintiff mention through out this litigation process (within plaintiff responses, pleadings, etc.). defendant and defendants agents manifested retaliation.

4). Plaintiff Filed a Complaint (§ 1983) in 1999 <u>Wright-vs-Deloach</u> <u>et. al.</u>, No. (CV 99-D-1405-N) Defendant Carolyn miles-Pruitt (Alabama Probation and Parole officer) whom prepared the report (P.S.I). Defendants

namely J. Deloach agents relied on the information defendants. C. Pruitt submitted to Alabama Department of Corrections.

5). The Alabama Department of Corrections Classification Specialist namely `Linda Williams' did rely on the information defendant C. Pruitt prepared and did Classified plaintiff as a sex offender. Defendants Course of actions reflects they relied on the information Contained in the P.S.I. report. Plaintiff Was afforded by the middle District Court of Alabama an evidentiary hearing in October 2001, IN June 2001 Defendants did set the stage to seduce plaintiff with an excessive and illegal amount of pyschotropic drugs For malicious and Capricious motives which did effect plaintiff at the evidentiary hearing in a way he was unable to express his thoughts in an orderly manner.

6). Plaintiff Was transported to Kilby Correctional Facility on

or about October 3, 2001, From Bullock Correctional Facility. On or about October 14, 2001 Sunday plaintiff was served a pleading From defendants (durning inmates legal mail Call) Suggesting the Court dismissed the Case as moot. None of the relief plaintiff initially ask the Court For were granted, as the results of the acts Committed against plaintiff as discribed above. Plaintiff Case <u>Wright</u> <u>Vs. Deloach, et. al.</u> (CV-99-D-1405-N) Was dismissed. Defendants Were successful in their stratagy tactic to defeat plaintiff (§ 1983).

7). Defendant C. Pruitt and Alabama Department of Corrections officials/agents were aware the information was heresay testimony/statements and plaintiff was 'not' given an opportunity to refute it at Sentencing because the P.S.I. report or its information was not presented. Defendant(s) C. Pruitt and Alabama Department of Correction officials/agents were aware that this was heresay

testimony / statements and beared no relation to the crime with which the plaintiff is/was charged.

8). [ Pursuant to Rule 26.3. (b) Ala. R. Crim. P. the pre-sentence report may contain (1) A statement of the offense and the circumstance surrounding it Burgess V. State 1998 WL 881173 Ala Crim App 1998). In Burgess the court cited United States V. Giltmer, 889 F. 2d 1004, 1007 (11th Cir. 1989), which held that courts are permitted to consider hearsay testimony at sentencing, but that due process required both that defendant be given an opportunity to refute it and that it bear minimal indicia of real reliability. The Alabama Supreme Court stated in Ex-parte Davis, 569 So. 2d. 738 (Ala 1990):
"Any evidence that has probative value and is relevant to sentence shall be received at the sentence hearing regardless of its admissibility under the exclusionary rules

OF evidence, provided that the defendant is accorded a Fair opportunity to rebut any hearsay statements].

9). Defendants Further submitted namely `C. Pruitt' the P.S.I. report to the Ala. Depart of Corr officials alleging plaintiff committed act of harrassment and rape insinuating R.W.W said information held probatfve value Further alleging that was "Why" plaintiff committed the Crimes of Burglary I and Assault II in which he was convicted For. DeFendant C. Pruitt went on to allege plaintiff conviction 'appeared' to be the result of an ongoing problem between the plaintiff and his Ex-Wife Family

10). In a memorandum written by Joe Hopper (Commissioner) in 1981 August 19 he defined R.W.W the Class of "Sex offender".

[See __Hendking v. Smith__ 281 F. 2d. 850 (11th Cir. 1986)].

11). Commissioner Joe Hopper deFined the Sex offender as containing

only persons Convicted of the offense or Committing the violent Sex act during the Commission of another Crime".

12). The Commission of a violent Sex offense precludes an inmate From being placed in minimum or Community Custody. For Clarification, this means the inmate was Convicted of the offense or the violent Sex act was committed during the Commission of another Crime. This does not mean that mentioning of the offense, which was eventually not-proosed or did not actually occur, has any bearing on these Custodies.

13). The Standard of equal protection analysis is well described by Judge Bank M. Johnson Keigler V. Jackson 638 F.2d. 716, 779 (5th Cir. Unit, B 1981).

14). We agree with the district Court that the equal protection Clause does not require that all persons be treated identically. However, distinctions between Similarly

LEGAL USE ONLY

Page 9 of 50

Situated individuals are to with stand an equal protection analusis such distinction must be reasonable, not arbitrary, and must rest on grounds having a fair and substantial relation to the object of the legislation. [See Stanton V. Stanton, 421 U.S. 7, 14 [95 S. Ct. 1373, 1377, 43 L.Ed 2d 688] (1975)]

15). Appellant argues that Sex offenders are no different from other Criminals and should be entitled to the same opportunities and privileges during incarceration.

16). However, It Seems Clear as a matter of general Knowledge that it would not be appropriate to allow Sex offender the opportunity to leave the prison on passes permitting them to mingle with the general public in the Community, or to be housed in low-security facilities from which escape is easier.

17). Appellant Stresses the

lack of solid empirical data or studies and ask why murders should receive privileges denied to sex offenders.

18). Here, too, it is a matter of general knowledge that except for professional killers, few people commit more than one murder in a life time. It is a crime involving a specific interpersonal crisis, and not a habitual offense. On the other hand, sex offenders are subject to a continually recurring physiological urge which is part of their nature and requires the imposition of effective restraints in order to curb the habitual repetition of episodes producing the harmful consequences to the public resulting from the propensities of their nature.

19). The classification adopted by Alabama prison system is not arbitrary and capricious, but reasonable and appropriate there is no constitutional invalidity unless the regulation as administered ma-

liciously or in bad Faith. No Such Short Coming has been demonstrated in the Case at bar].

   B. Claims of Plaintiff being Mentally ill

   1). This Honorable Court Sited Case E & T. Reality V. Strickland, 830 F. 2d. 1107 (11th Cir. 1987) Within plaintiff Wright Complaint ($ 1983) he Shows defendants selected a particular Course of action at least in part [because of] not merely 'in spite of' its adverse effects upon an identifiable group (and plaintiff being of that group]. [Emphasis added].

   2). Plaintiff Wright Fourteenth (14) Amendment Right to be Free of involuntary (Force med) Commitment Was Violated When he was seduce with pyschotropic drugs and transfered to mental Health Facility (Kilby and Bullock Correctional Facility) Which are guised as a prison and Such acts occurred by prison official without affording plaintiff notice or hearing or the

LEGAL MAIL ONLY

*Court*

by Jury in violation of <u>Alabama</u>
<u>Code</u> Section 3 22-52-37 and
the <u>Fourteenth (14) Amendment</u>
[See Lynch V. Baxley 386 F. Supp
378 (M.D. Ala. 1974)].

3). Defendants has encourage
arbitrary and discrinatory enforce
ment of rules, regulations and
laws and (Further - abuse) as
pointed out here in above and be-
low. The actions of the defen-
dants as stated here in shows
defendants denied plaintiff due
process of law in violation of
the <u>Fourteenth (14) Amendment</u>

4). The actions of defendats
put light on the Subject that Kilby
and Bullock Correctional Facility
(here after refered to as (K.C.F.)
and/or (B.C.F.)) is indeed a be-
havior modification "mind Control"
Unit in the guise of a prison as
Set Forth here in, the plaintiff,

remains in imminent danger (be
Cause defendants has been allowed)
by the Court to reserve the
oppertunity to Subject plaintiff

again Force psychotropic medi-
Cation) in Violation of the BILL
of Right 13th and 14th Amendments.

5). Further the plaintiff has
extensively Chronicled alleged
instance herein of events and
practises that Could in essence
only have been preformed by de-
Fendants acting in their individual
or officials Capacities, because
all the defendants Knew or should
have known that the plaintiff had
been denied due process of law,
involuntary Commitment, sub-
jected, to psychoatric treatment
and labeling the plaintiff as
mentally ill in violation of the
8th Amendment or due process Clause.

6). The transfer of a prisoner
From a prison to a mental hospital
< in the instant situation a
behavior modification Unit or a
mind Control Facility > must be
accompanied by appropriate pro-
Cedural protections Involuntary
Commitment to a mental hospital
is not within the range of Cond

LEGAL USE ONLY

tion of Confinement to which a prison sentence subject an individual while a conviction and sentence extinguish an individual right to Freedom From Confinement For the term of his sentence" this do not Authorize the state (A.D.O.C.)to "Classify" plaintiff R.W.W. as "mental ill" and to subject him to "involuntary pyschiatric treatment" without affording him additional due process protection. Here, the stigmatizing Consequence of a transfer to a mental hospital For "Involuntary" psychiatric treatment Coupled with the subjection of the prisoner to "mandatory" behavior modification as a treatment For mental illness. Constitutes the Kind of deprivation of liberty that requires procedural protection. [Vitek 63 L. Ed 2d at 557].

7). Minimum requirement are a matter of Federal law and are not diminished by the Fact that the state may have specified its own procedures that it may

deem adequate For deter-
mining the preconditions to ad-
verse official's action.

8). <u>Constitutional Laws § 255(5)</u>
Due process is not accorded
by a hearing an necessity For Civil
Commitment in which the subject
through physically present has no
meaningful opportunity to partici-
pate because of incapacity cause
by excessive or inappropriate medi-
cations.

9). Cited <u>Lunch V. Boxley</u> 386 F.
Supp 387 IV. This Court Shall now
proceed to Set Forth those Standards
and Safe guard which, at a minimum
the due process Clause, requires For
the protection of person whose liberty
is placed in jeopardy as a ~~RWW~~
consequence of their becoming
the Subject of Civil Commitment
proceeding against their will.

10). Parag. 261 Consequently in
order to deprive a person alleged to
be a danger to himself alone of
the right to choose between treat-
ment and liberty, that states must

Page 16 of 50

LEGAL USE ONLY

First demonstrate that because of his mental illness, he lacks the capacity to weight for him-self the risks of freedom and the benefit of hospitalizations [ cited 386 page 391 [ 87 paragq ]

11). The destruction of an individual's personal freedoms effected by civil commitment is scarcely less total than that effected by confinement in a penitentiary. Indeed, Civil Com-ment because it is for an inde-finite term may in some way in-voive a more serious abridgement of personal freedom than imprison-ment for commission of a crime usually does, Civil Commitment in-volves stigmatizing the affected individuals, and the Stigma ~~severe~~ R.W.W. attached though in theory less severe than the stigma attached to Crimminal Conviction may in-reality be as severe or more so. Donaldson V. O'Connor 493 F. 2d 507 520 (5th Cir, 1974).

12). Vitek 445 US. 489, 490; 100

Page 17 of 50

LEGAL USE ONLY

S. Ct. 1261, 1262. The Supreme Court Under (R.W.W) took a thorough examination of the liberty interest implicated by the statute. The Court First held that the State law, Created an "objective expectation" that a prisoner would not be transfered unless he Suffered From a mental illness that Could not be adequately treated in prison. This objective expectation gave the prisoners a liberty interest entitled them to appropriate procedures in determining the Condition which would warrant a transfer to a mental hospital.

(3). Id at 492, 100 S. Ct at 1263. The Court Concluded that the liberty interest encompassed both the Labeling of the inmate as mentally ill as well as the transfer to the mental hospital Id at 487-88, 100 S. Ct. at 1260-61 more over the Court recognized that the prisoners also faced the Significant Stigma associated with mental

illness.

My this Honorable Court re-
Cognized the same and by so
doing.

C. <u>Equal protection</u>.

The <u>Fourteenth (14) Amendment</u>
prohibits the government from
denying "any person within their
jurisdiction the equal protection
of the laws." It is said. "The
purpose of the equal protection
clause is to guarantee that
similar individuals will be dealt
with in a similar manner by the
government. Equal protection
claims arise when without ade-
quate justification, similar situated
persons are treated differently
by a state or government entity
or when dissimilarly situated
persons are treated alike".

2). Constitutionally, the mere
fact that a government is under no
obligation to provide a benefit, does
not excuse its invidious discri-
mination among potential recipients
after the decision has been

LEGAL USE ONLY

reached to establish the bene-
ft L Pitts v. Thornburgh 866 F.
2d. 1450d. To paraphrase a leading
Constitutional Scholar stated,
"tolerance For discretion in the
granting of benefit does not
imply tolerance For capricious
distribution of these benefits".

   3). By the prison official labels
of the past placed upon plaintiff
Wright. has a long last effect
along with them attaching a
mental health label(with out ade-
quate justification) makes me.
look dangerously violent and
dangerousness maube presump-
tively greater than that of other
inmates counterparts. In a Few
instances Judges have been
persuaded that prisoners and
civilians are sufficiently alike
to warrant similar treatment.
One conspicious area in which
this has ~~cause~~ occurred is where
mentally ill prisoners have been
transferred to mental hospitals.
Courts have concluded that such

inmates are entitled to the same procedural protection's afforded non prisoners Facing Civil Commitment.

4). There is no safe refuge For plaintiff under the Authority of the Alabama Dept. of Corr.. Many of the Alabama prison official Specifically/ namely those at Bullock (B.C.F.) has shown administation animosity towards plaintiff. This animosity ~~towards R.W.~~ (~~plaintiff This~~ R.W.W) From the administration is Continually being displayed as he is being transfered From prison to prison. Within the Ala. Dept. of Corr. Now plaintiff has Found himself at Easterling (E.C.F.) under the Authority of Warden Louis Boyd whom allowed much of the rights afforded to plaintiff to be Violated at Bullock Corr. Fac. This Honorable Court has allowed these prison officials the privilege to reserve the right to Seduce plaintiff with more pys-

chotropic at the next time they may feel appropriated. Now the defendants irrational justification with the use of phychotic drugs to put plaintiff claims out of court without any further hearing) carrying the dangers, "motivated by malice" to abuse their discretion in capricious and arbitrary ways need to be distrubed by this Honorable Court.

5). Thus far plaintiff Wright has sought to bring this Honorable Court `to notice' the complexity of plaintiff case (absent of a lawyer) is over wheling. plaintiff has made several pleas to this Honorable Court concerning his need for an attorney. Plaintiff circumstances which are exceptional has become clearly apparent to the sight or understanding of this Honorable Court yet this Honorable Court exclaims plaintiff is capable of presenting the necessary elements of his claims (without the assistant

~~Plaintiff~~

of an attoney, and without the documents relevant to his claims) to this Court". Plaintiff have been placed with the enormous task of obtaining pertienent documents out of his prison File. This Honorable Court States on page twelve (12) of its recommendation..." Wright has no constitutional right to receive written reports, Statements, diagnoses or treatment plans." The information in the documents plaintiff requested will substantiate the claims plaintiff presented to this Court, but the bare absent of these documents 'present the Causes' as this Honorable Court has taken to dismissed plaintiff claims.

(6). In a case such as this where in the plaintiff challenges the action of the prison officials exceptionally clear proof of discremination is required: Plaintiff Wright claims Conspiracy, deliberate indifference, due process violation, Ex-post Facto Violation, etc.) can only be shown

by plaintiff showing and telling
the acts the defendants demonstrated
through documentation. The docu-
ments which these prison officials
refuse to allow plaintiff to see
or to have (in the prison) will
demonstrate beyond a reasonable
doubt they reached an understand
to perform acts which violated
Plaintiff Constitutional right.

7). Plaintiff Petition this Court
by "motion For production of docu-
ments" the motion was denied
in part and plaintiff objection
to such denial over ruled. The
Said documents plaintiff requested
held/holds justifiable cause
For discloser (to declare suffi-
ciant evidence/Facts) pertaining
to plaintiff Claims and too
opposel object to the Courts
View of defendants motion For
Summary Judgement.

D. Due Process Violation

I. This Honorable Court Should
Use its power in a case as this

because plaintiff claims involves the question of Jurisdiction. This Honorable Court Seems to be un-clear as to the exact nature of plaintiff punishment as the results of these Fruadulent applied disci-plinaries, So plaintiff Shall Further attempt to explain. One reason plain-tiff Sought Full and Complete Copies of this disciplinaries 'are' to point out to this Honorable Court the de Fendants Wrongful application of these disciplinaries placed on plain-tiff.

2). The Alabama Department of Correc-tion Administration Regulation (here after refered to as (A.R.)) are believe to be in place to ensure procedures Fairness Concerning inmate. Yet, the Alabama prison officials has no Safe guards in place, nor opper-tunity to challenge officials mis-use of discretion. [See A.R. #403 Section IX Appeal of the inmate. The inmate may not appeal the Final action by the Warden or his/her designee].

3). This Honorable Court has pick out one instance that plaintiff mention in his pleadings, concerning defendant not calling witnesses, but the Court should look beyond that one (1) mentioning. Plaintiff was falsely accused of assaulting another inmate at the disciplinary hearing which was held without the accusing officer Lt. Babers (Witness's) in which the serving officer M Austin intentionally fail to re cond. The disciplinary hearing which was held without even the arresting officer `OFC. T. Holmes` being present.

4). Also this is another instance where in, the plaintiff has attempted to show defendants join or acted together to commit illegal acts. This is another obvious undertaken plaintiff is face with, while these defendants reserve the opportunity to seduce plaintiff with another dose of their ~~pys~~ psychotropic drugs as soon as plaintiff claims becomes apparent and the courts becomes favorable toward plaintiff claims. Lt. Babers

LEGAL USE ONLY

instructed OFC. T. Holmes to write the disciplinary in such a way to keep the appearance that plaintiff is dangerously violent. Other disciplinary infraction placed upon plaintiff at Kilby (K.C.F.) when defendants acclaimed plaintiff attack inmate Samual Jones. When in reality plaintiff fought inmate Jones in Self-defense. These reservation of preserving their use of pyschotropic drugs comes through these official plot to impose these disciplinary infraction which was appear justifiable cause(s) because they create this illusion of plaintiff being mentally ill as they discribed in their separate reports) and dangerously violent by these disciplinary infractions (Assault on person assc. with Doc, Assault on another inmate, etc.)

5). When plaintiff Wright was attack Samual Jones at Kilby (K.C.F.) and the serving officer name should be indicated on the disciplinary form) and then threaten plaintiff to sign an assault by him and his accomplish

Page 27 of 50

'LEGAL USE ONLY

While plaintiff Was in the Seg Unit.

6). Then Comes the assault plaintiff Faced on November 23, 2005 at the hands of D.O.C. Officials Sgt. Sherwin Carter and officer Roosevelt Brown and Was order by the Honorable Charles S. Coody to filed a Seperate § 1983. Such attack did physically harm plaintiff in such a Way plaintiff ability to properly respond to medical Defendants Ms. N. Burks response.

7). Plaintiff believe (as a matter of general Knowledge the mentioning of acts Committed by their maliciously motavated defendant to violate plaintiff Constitutional rights and their dirrect association Constitutes "Con Spired Cause" as plaintiff discribed in this Case When acts are shown unjustifiably applied and demonstrated Plaintiff has good reason to believe defendants (again) shall use pyschotropic drugs when the Case plaintiff presented to this Honorable Court Starts Favoring a Judgement leaning in Favor of him.

8) Defendant Capt. J. Nettles allowed those he supervise namely, (Lt.) Janet Hicks, Brenda Austin (Co.I) and Cedric Smith (Sgt) to violate their own. Oath of office <u>Alabama Code</u> § 14-13-3 Which states:

"Every officer and guard shall before entering on the duties of his office, take and subscribe before same officer authorized to administer oaths the following oath":

"I ...., do solemnly swear (or affirm as the case may be) that I will support the Constitution of the United States and the Constitution of the State of Alabama, as long as I remain a Citizen there of; that I will Faithfully execute and discharge all the duties required of me as ...., designating the offices and observe all the rules and regulation prescribed for the government of convicts. So far as Concern my office and will in no case ill treat or abuse ~~and~~ R.W. any Con

Vict under my charge or Control, nor inflict upon him, any other or greater punishment than may be presribed by said rules and regulations, so help me God."

9). Here, too, may this Honorable Court, [See A.R. No. 403 Disciplinary hearing procedures For major Rule Violation] Section III. <u>Procedure before Hearing</u> B. Appointment of hearing officer! Wardens will appoint a department of Corrections employee to serve as hearing office of any Charge(s) brought against on inmate pursuant to A.R. 403. Wardens, personnel who have Formed an opinion of the innocence or guilt of the Charge inmate, Arresting officer and Wittnesses may not serve as hearing officer.

10). Plaintiff has allready indicated such Violations in earlier pleadings and briefly mention again defendant J Hicks acted as hearing officer, ~~and Wittnesses~~ R.W.W. ~~may not serve as hearing officer~~ R.WW. after going beyond the ten (10) days, then designed the notice of postponement of disciplinary

hearing after the time the hearing should had been held. It is so obvious (as indicated) at the hearing that ofc. B. Austin deliberately misrepresent the truth to impose the disciplinary in-fraction and the hearing officer used her statements as stated facts to take away money, rights and other priviledges from plaintiff with the support of the hearing officer 'ofc. Smith' at the second disciplinary hearing is clear proof of fruad.

11). Plaintiff classification records which Defendant J. Seals and Keith Armagost prepared, clearly shows un-favorable judgement as a result of the mental health management suggesting plaintiff is not entitled to no lesser custody due to mental health ill-ness. When B. Austin false accused plaintiff of showing her his penis in a lewd and indecent manner and charge plaintiff with violating Rule No. 38 Indecent Exposure/Exhibitionism this occured within a years time of plaintiff parole date.

12). Plaintiff did within his

pleadings, response, etc showed ~~ONLY~~ LEGAL USE ONLY Honorable Court' how, these defendants detered from their own rules and regulation. It is general Knowledge that prisoner's prison files is reviewed by the parole board members prior to an inmate parole consideration hearing. It should not be strange to this Honorable Court when plaintiff assert these defendants ~~defendants~~ R.W.W. acts of appling Fraudulent disciplinary had a bearing on the parole board members decision to deny plaintiff parole, Coupled with the labels of plaintiff being a sex offender, the P.S.I. report alleging plaintiff committed a violent sex act, and the mental health management / team, and Classification Specalist's Classifying plaintiff as mentally ill, Without due process of law has imposed on him an atypical and Significant hardship on plaintiff in relation to the ordinary incidents of prison life. This atypical and Significant hardship Can well be seen by and through the administrative Classification Manual.

13). May this Honorable Court atten-

tion be turn too, this Court assertion that plaintiff Complains of Keeping a Certain Job, which he has no protective right to. The parole board members did apply a policy that was revised in 2001, which placed plaintiff at a disadvantage, and did Cause plaintiff minimum Custody ~~without~~ to be taken and placed back in medium Custody without any Fault of his own. There's no way For plaintiff to show this honorable Court the policy which was in Force at the time (of Commission of his crimes) and how the parole board members newly applied policy effected and/or Would not effected plaintiff in such a unfavorable way. These prison officials exclaims they have no copy available of the parole board policy prior to 2001 thus Far this policy Can only be obtain by Court order. Ex-post Facto Violation Comes into play upon plaintiff in 'light' of him being remove from minimum Custody to medium Custody due to being 'set off' Five years of his next parole Consideration date.

Page 33 of 50

14). This Honorable Court has Comes to recognize at some point in the past plaintiff Wright received mental health treatment while incarcerated Plaintiff Knows suggestion were made by Defendants by defendant J. Seals and K. Armagost as indicated on progress review Forms they prepard. Here arise two possibilities (1) defendant S. Seals and K. Armagost made their own mental health assessment's or (2) the truly was told this by mental health management, IF this Honorable Court is in question as to plaintiff Claims being contention or no more than raising the possibility that there is information still Claiming he is mentally ill, then as a matter of law, the Court too should question defendant S. Seals and K. Armagost assertion's made on plaintiff progress review Forms Forbidding him in lesser Custody based on mental health issues

## Pardon and Parole Board Defendants

1). This Court has well stated The Ex-post Facto Clause bars enactments that retroactive operation increase

LEGAL USE ONLY

the punishment For Crime after its Commission" and Alabama law gives the board broad discretion in determining whether an inmate should be granted parole. The state law also require that the Board Consider the public interest in every case, Alabama Code § 15-22-26 and § 15-22-24(a) (1975). This discretion, however, does not displace the protection of the Ex-post Facto Clause Garner 529 U.S. at 253."]

2). Officer Gavin Easterling designated Law Library Officer (Supervisor) alleges and asserts the A.D.O.C. have taken the previous Alabama Board of Pardon and Parole minutes Entry & Board order out Of the prisons. So at this time due to prison administration limitation plaintiff Can not show Comparson to the exact Wording indicate, therein, and now the Current Pardon and Parole board ~~potes~~ B.O.P policies / order Cause Significant and exceptional Changes in plaintiff Custody and A.D.O.C. Classification Status. Again this is a matter of the Court placing order on the defendants to produce pertinent documentation. It

is evident that plaintiff Wright was effected in significant way. See Exhibit One (1) Classification Appeal From dated 8-26-04] Indeed at the time of plaintiff Sentense impose the Parole board did mandate inmates be set off only three years intervals (parole hearing Consideration) Which was in accordance with the D.O.C. and did not Create such a risk which has develop, Concerning plaintiff under the earlies rule.

3). Defendant W. Segrest (Executive Director of the Ala. Bd of Pardons and paroles) assert his duties does not deal with (at all) decision's to grant or deny parole by Vote. Further stating that power is Vested solely in the Board, by Statute. None of the parole board members whom are in power to grant or deny parole responded to plaintiff Complaint, even though plaintiff included them in such Complaint by name and motion. Yes defendant W. Segrest rightfully states Judgement Was passed in Wright Vs. Deloach, et al. CV-99-D-1405-N Dist. Ct. M.D. Ala,

LEGAL USE ONLY

For dismissal by the Honorable Charles S. Coody. Mr. Segrest also rightfully states in his footnoted [See Special report of William Segrest and affidavit] "It appears that the agency's litigation file was 'purged' (to rid of undersirable people) several years ago, and defendant Segrest believe the case was closed by Judgement". In the light of manifested injustice as a matter of the law the Court's must intervene. How (?) was the defendant able and permitted to have Judgement passed in their favor at the evidentiary hearing, when plaintiff presented the right evidence for the hearing? The answer is simple defendants illegally and wrongfully injected plaintiff with excessive amount of psychotropic drugs prior to the scheduled evidentiary hearing on October 16, 2001. The Mental Health Management / team impaneled to deal with plaintiff Wright at that time is directly responsible for their wrongful use of their drugs. Under the rules of evidence this

LEGAL USE ONLY

Honorable Court (as a matter of law) Should Compel these documents in plaintiff prison File, From the defendants

4). Defendant W. Segrest goes on to Say," the P.S.I, report Contain a detailed description of the prosecution's Version of the offenses and Surrounding Circumstances, That report also Contain a Statement by Wright regarding the offenses" One thing is Certain when plaintiff was ask to make a Statement by the investigator he declined. What's Strange about the report is it mention plaintiff declined to make a Statement but, in the Same report an allege Statement is made under the titled / Section "Subject Statement".

5). Lastly Defendant W. Segrest States positively in his affedavit dated October 11th,, 2005, " I have no reason to doubt the truth of any Statements made in the report, However, I have taken no action in reliance on the Challenged Statement in the report.

I have no reason to believe that
the board relied on the challenged
statement. The board does not explain
why it withholds discretionary relief.
It explain why it grants relief. I
have no reason to believe that the
board would have granted parole in the
absent of those statements. The nature
of Wright's conviction could very
well have sufficed to persuade the
Board that Wright did not present
an acceptable risk.

I am prohibited by statute from
producing a copy of any document
in the Board files."

6). Here again, this Honorable
Court must compel the responsible
individuals (parole board members)
whom denied plaintiff parole and
cause these adverse effects he is
now face with, to produce these
documents.

<u>Medical Defendants</u>

1). Plaintiff believes the medical
defendants has a duty to properly
inform the A.D.O.C. officials of any
and all inmates whom have test

positive For tuberculosis and the
A.D.O.C. officials must ensure that
those whom tested negative For T.B.
are not exposed to those whom have
test positive. I'm not sure how this
Court arrived at the opinion "plaintiff
Complain that the medication to
Combat R.W.W. defendants Failed to pro-
vide him with medication to Combat
exposure to tuberculosis (T.B.)",
medical defendant action have caused
him to suffer From dementia and
medical defendants have in the
past tried to force him to take
psychotropic medication and may in
the future again try to force him
to take those medications.

It is certain plaintiff was placed
in seg cells and on the seg exercise
yard, with inmates whom test positive
For T.B. Plaintiff Wright is sure he
was forced with psychotropic medica-
tion and one of the occation when
plaintiff refused at Bullock Correctional
Facility he was assault be defendant
M. Strickland Sgt. For refusing.
Plaintiff is in the Control of the

LEGAL USE ONLY

of the A.D.O.C. officate LEGAL USE ONLY tiff Can not expect the medical defendants to acknowledge plaintiff Jerious physical illment because Such Verffication (on their part) would indicate the grounds For plaintiff. Claims of relief and possibly result in their dismissal From employment. Plaintiff have enquired in writing and Verbally) From defendant N. Burks on numerous Occation the Diagnostic & Statistican manual 4th Ed (D.S.M. IV) but defendant Burks reFused. Plaintiff Wright has pointed out the Out break of Jores & Jpots which appeared after taken repeatly doses OF Alipool tuberculin P.P.D. diluted) and what's was more Frightening each time plaintiff was expose to those individual which tested positive, he Suffered Jyptoms related to T.O. this to was reported to defendant N. Burks but her Concerns Were express in a non-chalant manners. Plaintiff reccive even worser neglect at the hands of Captain Nettles, Officer Ruffin and ofc. Foster while

Page 41 of 50

in the Segregation unit and totally disregarded plaintiff medical Concerns.

3) "In this Court Final analysis, it States plaintiff has Failed to show that he Was at any risk of serious harm or that any of the defendants knew that he Faced a substantial risk of serious harm."

4). The medical Defendants won't tell plaintiff Why his eye Sight is decreasing at Such a Fast rate, IF plaintiff Could see the eye examination diagnosis the 'reason' might be there. Plaintiff Was assaulted on November 23, 2005 by A.D.O.C. official because of Administration animosty and was physically injured, but only receive one document thus Far relating to medical personell report [See Exhibit 2 Bullock County Hosiptal Report].

5). Plaintiff Was served at one point on or about 8/20/02 A .... Notice of involuntary medication Hearing Which the writer wrote:

The hearing is being Conduct because you have been diagnosed with a serious mental

Page 42 of 50

**LEGAL USE ONLY**

illness and you are considered to be a risk For serious harm to others. Being unable to perform such life - substaining Function as eating and drinking and serious deteriora- tion in Functioning.

Medication has been offered to you but you have refused to accept it. The treatment team is recommending that the Following medication(s) be involuntarily administered :

   (a) Prolixin Dec.

   (b) Artane

   (c) Li.

   6). Plaintiff read out of the Code of Alabama brief discription of dementia which relates dirrectly to the symptom he has been suffering and repeatly telling Dr. Rayapati and nurse N. Burks about continually, Just to name two (2) but they have been denying me having such symptoms (poping joints and blurred vision, etc.)

   7). Plaintiff mention as well in his earlier pleading motion, etc. defendants Nettles and sgt speck acts to discourage plaintiff by or as if by threats, and acts of

Page 43 of 50

Violence with no penology justifica-
tion [See Exhibit 3, February 21,
2005 sworn Affidavit].

8). Plaintiff is still label as men-
tally ill mental Health outpatient
date November 8, 2004 ..., Mental
Health Consultation To Disciplinary
process [see Exhibit 4].

9). As the results of the Parole
Board members appliance of the
new policy upon plaintiff, the classifi-
cation specialist S. Seals took
me out of minimum custody and
restricted to medium custody
[See Exhibit 5, '24 Hour Advance
Notification of Pending Reclassifi-
cation].

<u>Conclusion</u>

1). Accordingly, Plaintiff Wright
files this objection to the recom-
mendation of the magistrate Judge
motion to grant defendants motion
for summary Judgement and recon-
sider it recommendation to enter
a Judgement in favor of defendants
and against the plaintiff and by so

doing, withdraw from this Honorable Court recommendation to dismissed this Case with prejudice, nor should the cost of these proceeds be taxed against plaintiff.

2). May this Honorable Court reconsideration and granting plaintiff motion for production of documents Which was denied in part, which was filed by this Court December 30, 2005 (Court Doc No 102) as well the objection filed there after.

3). This Court has stated, To state Viscable claim for relief under § 1983 a plaintiff must assert both an alleged Constitutional deprivation and 'that' the party charged with deprivation [is] a person who may fairly be said to be a state actor. American Manufacture 526 U.S. at 50, 119 S.Ct. at 985. One essential element is that the defendants that plaintiff named Defendants D.O.C. officials, Prison Health Service (P.H.S) employees, Mental Health Management/team/Employees (M.H.M) are person acting under Color of State

law and deprived plaintiff of right guaranteed by the United States Constitution makes the 42 U.S.C. § 1983 actionable.

4). It is precisely recognizable this Honorable Court has allowed the prison official full latitude of dis cretion but if this Honorable Court allows plaintiff requested docu- ments to be presented by defendants it will firmly show the defendants discretion has been abused. The pri- son R.W officials have acted unrea- sonably and therefore, have violated the Constitutional rights of plaintiff based on his race, prison status, state interest and arbitrary and capricious standards which this Court should condemn and apply needed safe guard to prevent future reoccurrances from the treatment plaintiff received it

appears in the mind of these prison officials the equal protection clause and due process clause obviously, does not require that they be pro- vided to black (i.e. concerning pro- tective custody and civil commitment,

FOR INMATE ONLY

etc,,). Unlike people in society being sent to a mental health Facility the state has allowed the same setting in prisons ~~official~~ R.W.W of Alabama providing the prison official the power to seduce inmates at will without appropriated safe guard to curve malicious and capricious motives which breaches 'the' inmate(s) right granted by Congress through the United States Constitution Amendment 8th and 14th.

5). As quoted: <u>Amendment I</u>: Congress shall make no law respecting an establishment of religion or prohibiting the Free exercise there of or abridging the Freedom of speech on of the press, or the right of the people peaceably to assemble and to petition the government For a redress of grievance

6). This Honorable Court should not so liberally contrue plaintiff Complaint as to permit prison officals peruvsion to violate plaintiff constitutional right mention within his pleading, reponses, motions, etc.

It now appears this Court approach plaintiff Complaint with skepticism. The retaliation and animosity plaintiff faced and faces can be inferred from the chronology of events plaintiff Wright stated and now states. The Court's recommendations strongly favors the interest of the prison officials. Plaintiff believe it is only reasonable this Court strike a balance between the interest of officials and the Constitutional rights of plaintiff.

I declare, under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Done this the 26th day of October, 2007,

Respectfully Submitted,

Richard W Wright Jr Bey

Richard W Wright Jr. Bey #187140
Easterling Correctional Facility
Dorm C-2 Bed 53-A
200 Wallace Drive
Clio, Alabama 36017

Page 48 of 50

<u>Certificate of Service</u>

This is to Certify, that I Richard Wayne Wright Sr. Bey am the plaintiff Pro-Se in the above encaption objection and certify I have sent a copy of this motion to the defendants Counselors through and by inmates legal mail and pre-paid postage to the following:

Gregory F. Yaghmai
ASB-2411-H67G
Scott, Sullivan, Streetman & Fox, P.C.
2450 Valley Dale Road
Birmingham, Alabama 35244

Troy King (Attorney General)
State bar #ASB-5949-5615
Steven Mallette Sirmon
(Assistant Attorney General)
Hugh Davis (Attorney)
Alabama Board Pardon and Paroles
Post Office Box 302405
Montgomery, Alabama 36130

David B. Block (ASB-5048-K62D)
William R Lunsford (ASB-4265-L72L)
Douglas B. Hargett (ASB-9928-581H)

Page 49 of 50

Balch & Bingham L **LEGAL USE ONLY**
Post Office Box 18,668
Huntsville Alabama 35804-8668

Kim T. Thomas
Gregory Marion Biggs
Alabama Department of Correction
        Legal Division
301 Ripley Street
Montgomery Alabama   36130

    Plaintiff Further Certify that I
have sent a copy of this objection to
the Clerk of the Court by placing
this objection in the United States
mail box at Easterling (E.C.F.) with
First Class postage (Stamps) prepaid
and properly address this on the
<u>26th</u> day of October, 2007.

            Respectfully Submitted,

            ~~Richd W Wright Jr Bey~~
            Richard W. Wright Jr. Bey # 187140
            ~~18~~ U.S.C. 31746

Richard W Wright Sr. Bey
A.I.S # 187140 Dorm C-2/53-A
Easterling Correctional Facility
200 Wallace Drive
Clio, Alabama 36017

This correspondence is forwarded from an Alabama State Prison. The contents have been evaluated, and the Alabama Department of Corrections is not responsible for the substance or content of the enclosed communication.

Office Of The Clerk
United States District Court
P. O. Box 711
Montgomery Alabama 36101-0711

